JULIUS M. COHEN *vs.* EDWARD J. NAGLE & another.

Suffolk. November 28, 1904. — January 2, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING,
BRALEY, & SHELDON, JJ.

*Equity Pleading and Practice. Trade Name. Equity Jurisdiction,* To restrain
wrongful use of trade name.

In case of an appeal from a decree in equity made by a single justice of this court,
if the justice, although not requested by the appellant under R. L. c. 159, § 23,
to report the material facts found by him, acting in his discretion voluntarily
files a "memorandum of decision" which is a report of his findings of fact, the
memorandum becomes a part of the record as much as if it had been made as a
report of findings in response to a request under the statute.

A manufacturer of cigars who, not having a right to the word "Keystone" as a
trademark, has established an extensive business in the New England States,
where his cigars have become well and favorably known in the trade and to the
public as "Keystone cigars" or "Keystones," can maintain a suit in equity to
restrain the use of the word "Keystone" by another cigar manufacturer in such
a way as to injure the plaintiff by causing the public to believe that the cigars
sold by the defendant are those manufactured by the plaintiff, although the word
"Keystone" before and at the time of its adoption by the plaintiff was used as
a public brand or label in connection with the manufacture and sale of cigars,
principally in the Middle and Western States ; and, if in such a case a decree has
been made restraining the defendant from using the word "Keystone" in the
New England States, and the defendant appeals from this decree, the plaintiff
taking no appeal, it is not open to the defendant to contend that the decree is
too narrow, and should have been made, if at all, without geographical limita-
tion, and it is not necessary to decide whether an injunction without geograph-
ical limitation might have been issued in favor of the plaintiff. LORING,
LATHROP, & HAMMOND, JJ. concurring in the result reached, but further ex-
pressing the opinion that, it not having been shown that the trade meaning of
the word "Keystone" extended beyond New England, the injunction rightly
was confined to that territory.

A defendant in equity against whom a decree for an injunction has been made, on
appealing from the decree, the plaintiff taking no appeal, will not be allowed to
object to it on the ground that, if granted at all, it should have been broader in
its scope.

KNOWLTON, C. J. This is a suit in equity to obtain an injunction against the fraudulent and wrongful use of the plaintiff's trademark and his trade name, which he adopted and used in the manufacture and sale of cigars, and for the recovery of damages caused by the defendants' wrongful interference with the plaintiff's trade.

The justice * who heard the evidence filed a "memorandum of decision," which is a report of his findings of fact. A preliminary question is whether this is a part of the record, which has the effect of such a report made under the R. L. c. 159, § 23. We are of opinion that it is. It is a convenient and proper practice to put upon the record a report of facts found, in order to present, in a succinct form, the substance of the conclusions from the evidence on which the decree is founded. This brings directly to the attention of the court that which, in some jurisdictions, is found in long recitals in the decree. The statute just referred to makes the filing of such a report compulsory upon the justice, if an appellant requests it within four days after he has been notified of the filing of the decree. The findings stated in such a report will not be set aside unless they are plainly wrong, and we are of opinion that the presiding justice may, in his discretion, file such a report voluntarily, which shall have the same effect as one filed under the statute.

The findings of the justice in the present case are as follows: " If the plaintiff's case stood on the alleged similarity of the boxes and packages in which the defendants' cigars are put up to the boxes or packages in which the plaintiff's cigars are put up, I do not think that he has made out a case which would entitle him to relief. In other words, I do not think that the evidence shows that the particular style or shape or dressing of the boxes in which his cigars are put up and sold has become so associated with his cigars in the minds of that portion of the public which purchases and deals in cigars, that the style or shape or dressing of the boxes in which the defendants' cigars are put up and sold would tend to mislead and deceive, or do mislead and deceive, the public into believing that they are buying the plaintiff's cigars, when they are buying the defendants' cigars or some other cigars.

* Mr. Justice Morton.

In fact, I understand counsel for the plaintiff substantially to concede that unless the defendants are restrained in the use of the word 'Keystone' the other relief which they seek will be of no practical benefit.

"I think that the evidence shows that the word 'Keystone' had been used as a brand in connection with the manufacture and sale of cigars, by manufacturers and dealers in cigars, before the plaintiff began to use it, and that that use continued down to the time when the plaintiff adopted it and began to use it. But I think, and I so find, that this use was confined in the main to the Middle and Western States. Some cigars were sold in Connecticut, and a few in Vermont and Massachusetts, and perhaps in one or two of the other New England States, as 'Keystone' cigars, but the number was not large, and the public and the dealers did not come to recognize any particular cigar as the 'Keystone' cigar, as they have come to recognize the plaintiff's cigar. The plaintiff adopted the word in 1885 in connection with a five-cent cigar manufactured and sold by him. When he adopted the name he did not know that it had been used before, and supposed that he was the originator of it. From that time on he continued to make and use the cigars in increasing quantities, until he has worked up in New England a large trade in them, the evidence showing that he sells between four and five millions yearly, of the value of about $160,000. The cigars are well and favorably known throughout New England many regarding them as the best five-cent cigar in the market. I doubt whether the plaintiff has established his right to the use of the word 'Keystone' as a trademark in the strict sense of that term. But I think that the evidence shows, and I find, that his cigars have become known to the trade in New England and to the public in New England by the name 'Keystone,' which he has adopted, and that the public in New England have come to associate the word 'Keystone' with his cigars, and not with the cigars of any other person. He has spent large sums in introducing the cigar in New England, and building up a trade there, and the name is a valuable name in the business in New England. The full name or brand which the plaintiff has adopted is 'B. C. A. Keystone,' the initials 'B. C. A.' standing for 'Boston Co-operative Association,' which was first a corporation and then a partner-

ship, with both of which the plaintiff was connected and to whose business he has succeeded. The cigars are known in the trade and to the public as 'Keystone' or 'Keystones,' and purchasers at wholesale and retail call for and order them as 'Keystone' or 'Keystones.'

"Recently, or rather a short time prior to the bringing of this bill, the defendants began to put upon the New England market a cigar called the 'Keystone Maid,' and in some cases, where the plaintiff's cigar was called for, this has been handed out to the purchaser instead. The cigars are purchased by the defendants from a firm by the name of H. Sommer in East Bethlehem, Pa., which manufactures them, and that firm is defending this suit. The evidence tends to show, I think, and I find, that one object of the defendants and of the firm of H. Sommer, in selecting the name 'Keystone Maid,' was to avail themselves of the popularity which has attached to the plaintiff's cigars. The defendants' cigar is not as good as the plaintiff's cigar, and it is sold for a less price. The defendants conceded that if they had no right to use the word 'Keystone' they would have no right to use the words 'Keystone Maid,' contending that the effect of the prior use of the word 'Keystone' had been to make it common and public and to prevent the plaintiff from acquiring any exclusive right to its use in connection with his cigars. The defendants do not contend that they have acquired any special or exclusive right to the use of the word. But I rule that prior use of the character described above did not and would not prevent the plaintiff from acquiring a right to the exclusive use of the word in connection with his cigars in New England, and that he is entitled to be protected in such use if the trade and the public in New England have come to associate the word with and to recognize it as indicating his cigars and not the cigars of any other person. I find that the trade and the public in New England have come to associate the word 'Keystone' with the plaintiff's cigars, and to recognize it as meaning his cigars and not those of any other person. I find that the words 'Keystone Maid' as used by the defendants, tend to, and do mislead and deceive the public by causing them to believe that the cigars sold under that name are the plaintiff's cigars, and give to dealers so disposed an opportunity to palm off on to purchasers

and the public cigars of that brand as and for the plaintiff's cigars. Instances in which such deception had been practised or attempted, both before and since the institution of this suit, were introduced in evidence before me, subject to the objection and exception of the defendants. The price of the 'Keystone Maid' cigar sold by the defendants is such that it comes into competition with the 'Keystone' cigar sold by the plaintiff. The plaintiff duly notified the defendants and the firm of H. Sommer that the sale of the 'Keystone Maid' cigar was interfering with the sale of his 'Keystone' cigar, and requested them to discontinue the use of the word 'Keystone.' They declined to do so, and stand upon their rights.

"I do not think that the plaintiff has been guilty of laches, and I think that he has not done or omitted anything which could operate as an abandonment of any rights that he might otherwise have had to the exclusive use of the word 'Keystone' in New England."

From a final decree in favor of the plaintiff, enjoining the defendants from selling or offering for sale, in the New England States, cigars in packages, marked with the word "Keystone," and awarding him damages, the defendants appealed.

The findings of the justice show the plaintiff's acquisition of a valuable trade name, by the long-continued use of the word "Keystone" in his business. It is not found that this word is a trademark, or that there has been any interference with his trademark. There has been no fraudulent imitation of his manner of packing and marking his cigars, unless he has acquired a certain right of property, which the law recognizes, in the word "Keystone," as applied to cigars of his manufacture. If he has such a right, it is a fraud upon him for the defendants to use the word in selling cigars in such a way as to mislead the public, and thus deprive him of a valuable part of the trade that fairly belongs to him, from those who wish to buy goods made at his factory. If he has no such right, it is not fraudulent for the defendants to use this word, if they avoid all other misleading methods, even though the reputation of the goods which have been marked with it, will give the defendants profits resulting indirectly from the market which the plaintiff has helped to create. Although it is sometimes said that every trademark case is

founded upon fraud, actual or constructive, the ultimate question is whether there is a right in the plaintiff which the law recognizes and enforces. The fraud is in the violation of such a right, through deception of the public. In determining whether the plaintiff has such a right, in a case like the present, the question is whether a name which originally had no recognized value has been so used by him as to give it a value, as a designation of articles of his manufacture, whereby he may enable the public, who want his goods because of their known excellence, always to recognize them. By such a use of the name, he has given it a value and made it property, because of the meaning that is attached to it. But others may have a right to use the same name. It may be a geographical name, as in the case of *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85. It is conceivable that a person may be found who bears the same name, and then there is a right to use the name in each. When there is such a conflict of rights, it is the duty of the courts so to regulate the use of the name by each, that there will be no injury, or as little injury as is possible, to the right of the other. In many cases a defendant will not suffer appreciably from a prohibition of any use of a name. In others, as in the case just referred to, it would be unjust to deprive him altogether of a use of a name which he might need for certain purposes; but he will be compelled to use it in such a way as will preserve to a plaintiff his right of property in the use which he has made of it.

If there had been no use of the name " Keystone " in the sale of cigars, except by the plaintiff and the defendants, and Sommer, the manufacturer from whom the defendants bought their cigars, the plaintiff's right would be overwhelmingly established; for the defendants and Sommer first used the word " Keystone " in 1902, and began at once to sell in New England where the reputation of the plaintiff's product, known by that name, had long been established. It becomes necessary to consider what effect the use of the word by others has upon the plaintiff's right. Much of the defendants' testimony is founded upon the manufacture, by the American Lithographic Company and its predecessors in business, of a label containing the word " Keystone," which they kept for sale, to be used upon cigars. It was proved

that there was a well known distinction in the cigar trade between public labels and private labels. This was a public label. It was sold to anybody who would buy it, and was used, not to indicate that the cigars were manufactured by any particular firm or person, or that they were of any particular quality, but apparently merely as an attractive pictorial designation of any brand to which the manufacturer might choose to attach it. It appeared that this was purchased and used at different times by several small manufacturers, chiefly in the central part of the country. It is manifest that no rights would be acquired, either in the word or in the label, by such a use, for it was not intended to show, and did not show anything in which one could have a private right of property. If this use had been in a region in which the plaintiff's goods were generally sold, it would have had a tendency to prevent the public from concluding that the word "Keystone" designated distinctively cigars of his manufacture, and in that way might have prevented him from acquiring a right in the use of the name. Existing even in distant States, it is worthy of consideration on this point, although in the present case it is insufficient to offset the effect of the proof presented by the plaintiff. The use of this particular public label is not shown to have begun earlier than 1888, three years after the plaintiff's business was established and his trademark was registered and first used. It is plain, therefore, for these different reasons, that the use of this label did not prevent the plaintiff's acquisition of a right.

There is some evidence of a similar use of labels, seemingly to a small extent, at a little earlier time, beginning shortly before the plaintiff's sales began. But this is of a very indefinite character, and with one or two possible exceptions to which we shall refer later, it has no tendency to show a use to designate origin, or to prove that anybody acquired, or supposed he was acquiring, any right. Such a use neither gave nor took away any rights in the name, but left it as it had always been, a name which anybody might adopt. If by the adoption and long continued use of it in a part of the country where he was the only user, one should build up for it a wide reputation as designating goods of his manufacture, there is no reason why this valuable reputation should not be protected as property by the courts.

As between two persons, each claiming to have acquired a right by use, priority is important, and ordinarily decisive. But use, of a kind which could never give a right, does not prevent another person, subsequently, from acquiring a right by a different kind of use which would result in a right. At most, it only increases the difficulty of finding, in the subsequent use, the features which are necessary requisites of its recognition as property. In such a case the conditions are similar to those existing when one, having a trademark or trade name, abandons it, and leaves the name open to a future acquisition of rights in it, as if it never had been appropriated. There is no doubt that an abandonment paves the way for future possession and property in another person. *Brower* v. *Boulton*, 58 Fed. Rep. 888. *Blackwell* v. *Dibrell*, 3 Hughes, 151; Fed. Cas. 1475. *Royal Baking Powder Co.* v. *Raymond*, 70 Fed. Rep. 376; 85 Fed. Rep. 231. *Tetlow* v. *Tappan*, 85 Fed. Rep. 774. *Macmahan Pharmacal Co.* v. *Denver Chemical Manuf. Co.* 113 Fed. Rep. 468. *Menendez* v. *Holt*, 128 U. S. 514. *Daniel* v. *Whitehouse*, 15 Rep. Pat. Cas. 134. Moreover, the evidence tends to show that all of these earlier users of the name abandoned it long ago.

The witness Zug began as a cigar manufacturer in 1886, after the rights of the plaintiff had accrued. The three sales of " Keystone " cigars, which he says he made as a jobber in 1884 or 1885, were not of goods of his manufacture, and we have no distinct information in regard to them. There is nothing to show that they were so made, or that the cigars were of such a kind, as to tend to give anybody any right of property in the label or the name. The labels which Zug afterwards used in his manufacturing business were procured of one Schmidt, who testified that he made others of the same kind for another manufacturer. This indicates that they were not used to show that the cigars came from any particular maker.

There is testimony that two or three other witnesses sold some cigars called " Keystones " before the plaintiff began; but apparently this was in a small way, and they long ago ceased to use the name. The voluminous evidence shows no such use by others as should deprive the plaintiff of a valuable property in his trade name, which has grown up in his extensive business,

conducted at great expense, covering a large market, for nearly twenty years. The defendants did not attempt to show that anybody acquired a trademark or a trade name in "Keystone," as applied to cigars, although there is testimony that some persons have called their labels private. The defendants, and Sommer, of whom they bought, knew of the plaintiff's trade and of his claim of right before they adopted their name.

The plaintiff, having this right of property, is injured by the defendants' use of the word "Keystone," as they have used it, and we see nothing in the situation of the defendants which calls for a modification of the injunction, so as to enable them to use the word in any different way. If it appeared that they also had some right to use the word other than the general right to words and names that have not been previously appropriated, the injunction would be modified so as to preserve for each party his rights, so far as possible with a due regard to the rights of the other. This is what was done in *American Waltham Watch Co.* v. *United States Watch Co., ubi supra.* It may be that there is some cigar maker whose use of this name has been such that, if he were before the court as a defendant, it would not seem proper to compel him to give it up altogether, but only so to modify it as to prevent the public from mistaking his goods for those of the plaintiff. But in the present case, as between the plaintiff and the defendants, there is no reason why the injunction should give the defendants the right to use the name upon cigars in any form.*

---

* The injunction contained in the decree was as follows: "That the defendants, both jointly and severally, and their principals, attorneys, agents, servants, and workmen, be and they hereby are enjoined perpetually from selling or offering for sale in the New England States, or any of them, any cigars of which the package bears the word 'Keystone' or the words 'Keystone Maid,' or any word so nearly resembling the said word 'Keystone' as to be likely to be mistaken therefor, or likely to cause the said-cigars to become known in the market as 'Keystone' cigars, or as 'Keystones,' or likely to cause said cigars to be mistaken for 'Keystone' cigars, unless said cigars are made by the plaintiff, and from selling or offering for sale in the New England States, or any of them, any cigars bearing the word 'Keystone,' or the words 'Keystone Maid,' or any other word or words, mark or marks, signs or symbols likely to cause the said cigars to become known in the market as 'Keystone' cigars, or as 'Keystones,' unless said cigars are made by the plaintiff, and from using any words or devices, marks, signs, or sym-

It is contended by the defendants that the right to use a trade name in connection with an article of commerce, to designate the goods of the plaintiff's manufacture, is a right which goes with the property and has no geographical limitations within the United States. The argument is that if it is acquired at all, it relates to the general public who may wish to buy, without reference to the boundaries of States, and that, under recognized principles, it includes a right to protection in any market in the country where the plaintiff chooses to sell his goods. So far as this contention is intended to show that the plaintiff has acquired no right to protection in the use of his trade name, we have already given reasons why it is ineffectual. It is not necessary to consider whether an injunction without geographical limitations might have been issued in favor of the plaintiff. The plaintiff has not appealed, and does not ask us to give the injunction a wider scope. The defendants cannot complain that it is too favorable to them. The general principle is stated in 2 Encyc. of Pl. & Pr. 527, that an appellant is not entitled to a reversal of a judgment or decree because it is too favorable to him, and many cases are cited in the notes. Although, in Massachusetts, an appeal from a final decree in equity brings up the whole case, the principle is applied in this class of cases. *May* v. *Gates*, 137 Mass. 389. *Moors* v. *Washburn*, 159 Mass. 172, 176. *Kane* v. *Shields*, 167 Mass. 392. It also is applied in cases of other kinds. *Vinal* v. *Spofford*, 139 Mass. 126. *Smith* v. *Dickinson*, 140 Mass. 171. *Hall* v. *Foster*, 114 Mass. 18. It is plain that this question is not open to the defendants, upon the record before us.

There are certain cases in which a court, of its own motion, may reverse or modify a judgment or decree for illegality or error. If it appears that it is not within the jurisdiction of the court, or contains provisions which are in conflict with the statutes, or against public policy, a court, on appeal, deal-

---

bols in the marketing of their cigars in the New England States, or any of them, likely to suggest, facilitate, or render easy the substitution by dealers in cigars of the cigars made or sold by the defendants when the ' Keystone' cigar made by the plaintiff is ordered or called for, or cause them to be known as ' Keystone' cigars."

ing with the whole case, may well refuse to confirm it. *Cardoze* v. *Swift,* 113 Mass. 250. *Robinson* v. *Oceanic Steam Navigation Co.* 112 N. Y. 315. *Davidsburgh* v. *Knickerbocker Ins. Co.* 90 N. Y. 526. In any view that can be taken of the law, or facts, this is not such a case. The only effect of this contention of the defendants, if sustained, is to show that the decree gives the plaintiff somewhat less than he is entitled to.

*Decree affirmed.*

LORING, J. The bill in the case at bar went first on the ground that the plaintiff had a technical trademark in the word " Keystone," and, second, on the ground that he was entitled to the word " Keystone" as a trade name in contradistinction to a trademark proper.

It was proved at the hearing, first, that the word " Keystone" was in common use as a public label before and at the time of its first use by the plaintiff, and second, that it was a geographical name, there being ten cities or towns in the United States, so named.

At the argument, the plaintiff's counsel, presumably for these reasons, abandoned the plaintiff's claim to a trademark proper, and undertook to support the decree appealed from on the ground that " Keystone " was a trade name, and on that ground alone.

I understand that this concession of counsel ended all discussion as to the plaintiff's right to a trademark proper in the word " Keystone," and that the only matter now for discussion is whether he has made out a case on the doctrine of a trade name as distinguished from a trademark.

In my opinion the plaintiff's right to the word " Keystone " as a trade name (using that word in contradistinction to a trademark proper) does not depend upon priority of use by the plaintiff as a distinctive mark for his goods, but upon the fact that that word (Keystone) had in fact come to have a secondary or trade meaning, namely, that cigars bearing that name are cigars of the plaintiff's manufacture.

So far as the result in the case at bar goes (to which I agree), it is of no consequence which of these two is the true doctrine. The difference between the two so far as results generally go is that if the first is the true doctrine the plaintiff, on making out

a case establishing a trade name, is entitled to an injunction generally, as in case of a trademark; while if the second is the true doctrine, and if it appears in evidence (as it did in the case at bar) that the secondary meaning has in fact been established in one market or part of the country only, the injunction must be limited to that market or part of the country. In the case at bar that is not important, because in this case the plaintiff has not appealed from the decree granting an injunction confined to New England; but it will be of importance in future cases whether this injunction is upheld because it was rightly confined to New England or because, although wrongly so confined, no appeal was taken from it by the plaintiff. Not only is there a question of the proper injunction to be issued in future cases, but there is this further question, to wit: What is a plaintiff to prove to make out a case of a trade name as distinguished from a trademark?

For that reason it becomes important to consider what decree should have been entered and what is the principle on which the plaintiff's rights here depend.

The right of action in all cases is the same, namely: A defendant has no right to sell his goods as the goods of the plaintiff. The right of action is the same whether the plaintiff complains that the defendant has used his, the plaintiff's, trademark, or that he has used a trade name unfortunately so called, or that he has imitated his packages or that he has in terms represented that his goods are the goods of the plaintiff's manufacture.

When a plaintiff undertakes to make out such a case by proving that the defendant has used his, the plaintiff's, trademark or a colorable imitation of it, he has to prove that the mark is a valid trademark and is his. To do this he must show that he adopted as a trademark some arbitrary device not used by others, or some word which he has coined, for example, as distinctive of his goods, and that he has sold goods on the market with that device or arbitrary word. In such a case he shows that the defendant by using his mark has represented his goods to be goods of the plaintiff's manufacture.

But cases have arisen where goods have in fact come to be known as goods of the plaintiff's manufacture under a name

which for one reason or another the manufacturer could not adopt as a trademark. For example, one cannot claim as a trademark the name of the town in which he manufactures his goods. Yet if in fact the place of manufacture becomes so identified with goods of the plaintiff's manufacture that in the trade it has come to mean not that the goods are manufactured in that place but that they are the plaintiff's goods, on proving that fact the plaintiff can have the defendant enjoined from using words which truly state where his, the defendant's, goods are made, because those words in the trade have lost their primary meaning and have acquired the secondary meaning that the goods are goods of the plaintiff's manufacture. Take as an example the first of the trade name cases, the Glenfield Starch case, decided by the House of Lords in 1872, *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508. There the plaintiff's starch factory was originally situated at a place called Glenfield, and his starch became known on the market as Glenfield Starch. He moved his factory to a neighboring town, whereupon the defendant began the manufacture of starch at Glenfield, and although he did not call his starch Glenfield starch, yet he used the word " Glenfield " in connection with it in such a way that buyers would be misled into thinking it was what had come to be known on the market as Glenfield starch, and he was enjoined. It was admitted that the defendant had a right to manufacture starch at Glenfield and to advertise that fact, but since Glenfield starch had come to mean in the trade not starch made at Glenfield but starch made by the plaintiff, the defendant was enjoined from so using the words " Glenfield Starch " in his labels and advertisements as to lead the public to believe that his goods were the plaintiff's. The doctrine is put in a few words by Lord Westbury, at p. 521 : " I take it to be clear, from the evidence, that, long antecedently to the operations of the respondent, the word ' Glenfield ' had acquired a secondary signification or meaning in connection with a particular manufacture — in short, it had become the trade denomination of the starch made by the appellants. It was wholly taken out of its ordinary meaning, and in connection with starch had acquired that peculiar secondary signification to which I have referred." This case was followed by *Thompson* v. *Montgomery*, 41 Ch. D.

35, on appeal, *Montgomery* v. *Thompson*, [1891] A. C. 217. In that case the defendant who manufactured ale at Stone was enjoined from selling it as Stone ale because the plaintiff proved that his ale which was made at Stone had been known so long in the market as Stone ale that those words had come to have a secondary trade meaning of ale of the plaintiff's brewing. In *Reddaway* v. *Banham*, [1896] A. C. 199, Camel Hair belting was proved to mean in the trade goods manufactured by the plaintiff and not belting made of camel's hair. Finally, in Massachusetts we have the Waltham watch case, *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85. On the other hand an unsuccessful attempt was made in *Cellular Clothing Co.* v. *Maxton*, [1899] A. C. 326, to prove that cellular cloth had acquired the meaning of cloth made by the plaintiff.

In all these cases the ground on which the plaintiffs obtained relief was that they had made out in proof the fact that Glenfield starch in trade did not mean starch made at Glenfield, but starch made by the plaintiff; that Stone ale in the trade did not mean ale made at Stone, but ale made by the plaintiff; that Camel Hair belting did not mean belting made of camel's hair, but belting made by the plaintiff; and finally, that Waltham watches did not mean watches made at Waltham, but watches made by the plaintiff, or, as it was put by Holmes, J. in that case: "It was found at the hearing that the word ' Waltham,' which originally was used by the plaintiff in a merely geographical sense, now, by long use in connection with the plaintiff's watches, has come to have a secondary meaning as a designation of the watches which the public has become accustomed to associate with the name." *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85, 86. To the same effect is the subsequent case of *Viano* v. *Baccigalupo*, 183 Mass. 160. In that case it was said, referring to the English cases cited above: " It is laid down in those cases that where the sole thing on which the plaintiff relies for relief against the defendant is a word common to the public, as in case of a geographical name, the plaintiff is not entitled to protection unless he proves that the name has been so exclusively identified with his own manufacture as to have acquired a secondary meaning, as was

done in _American Waltham Watch Co._ v. _United States Watch Co._ 173 Mass. 85."

In the case at bar the evidence went no farther than to show that the words "Keystone Cigars" had the secondary or trade meaning in New England, and it follows that the injunction was rightly confined to that territory.

No question has been raised of the right of the defendants to use the word "Keystone" in connection with cigars in such a way as to show that the cigars so named are not made by the plaintiff.

Whether it is proper to say that the plaintiff in such a case as the case at bar has a right of property in such words as "Keystone Cigars," is a point on which there is a difference of opinion. See Lord Westbury in _Wotherspoon_ v. _Currie_, L. R. 5 H. L. 508, 522, and Braley, J. in _Regis_ v. _Jaynes_, 185 Mass. 458, on the one hand, and on the other hand Holmes, J. in _Chadwick_ v. _Covell_, 151 Mass. 190, 194, and Lord Herschell in _Reddaway_ v. _Banham_, [1896] A. C. 199, 209, 210. But whether it is or is not correct to say that such a plaintiff has property in such a word is not of consequence. If he has a right of property in such a word, this right of property results from his right to prevent others from using it. His right to prevent others from using it does not result from his property in it.

The fact that the word "Keystone" was a geographical name and in common use as a cigar label since 1870 prevented his adopting it as his distinctive mark for cigars of his manufacture. It did not prevent those words from acquiring in time a secondary or trade meaning, to wit, cigars made by the plaintiff.

The thing and the only thing that is material in case of a trade name is this: Does that name in the trade mean that goods to which it is attached are goods of the plaintiff's manufacture? If it does, a case of a trade name is made out although the plaintiff had no right to adopt it as his mark when he did adopt it, without regard to his having adopted it as such or having been the first to adopt it, and without regard to how many others are then using it. It is worth while to note that it appears from the report that in the Waltham watch case the word "Waltham" was not originally adopted as a distinctive mark. "It was found at the hearing that the word 'Waltham'

which originally was used by the plaintiff in a merely geographical sense," by long use had come to mean watches made by the plaintiff. Those facts undoubtedly would raise difficulty in the proof. But it is all a matter of proof. The thing and the only thing to be proved is the trade meaning of the name. If the plaintiff proves that its trade meaning is that goods to which it is attached are goods of the plaintiff's manufacture, the plaintiff can have all other persons enjoined in using that name in selling their goods so as to mislead buyers into thinking that their goods are goods of the plaintiff's manufacture. Other persons are not prevented from using the name in question in its primary sense. Take for example the Stone ale case, the most extreme case of all because the use of the words Stone ale was absolutely forbidden ; yet it was admitted that the defendant was at liberty to advertise that his ale came from Stone. See *Thompson* v. *Montgomery*, 41 Ch. D. 35, 41 ; *Montgomery* v. *Thompson*, [1891] A. C. 217, 222–228. In such a case the defendant has a right to use the word in its primary sense but not in its secondary sense ; and it is the duty of the court to decide what use of the word is a use of it in its primary and what in its secondary sense.

As I have said, in the case at bar the evidence established the fact of a secondary meaning of the words "Keystone Cigars" in the New England States, but it went no farther. For that reason the injunction issued was right.

I am authorized to say that Justices Lathrop and Hammond concur in this opinion.

The case was argued at the bar in November, 1904, before *Knowlton,* C. J., *Morton, Barker, Hammond,* & *Loring,* JJ., and afterwards was submitted on briefs to all the justices. Mr. Justice Barker died before the decision of the case.

*A. Knauth,* (of New York,) (*E. N. Jones* with him,) for the defendants.

*O. R. Mitchell,* (*A. S. Cohen* with him,) for the plaintiff.