## C. A. BRIGGS COMPANY *vs.* NATIONAL WAFER COMPANY.

Suffolk.   March 17, 1913. — May 24, 1913.

Present : RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Unfair Competition. Trademark. Trade Name. Equity Jurisdiction,* To restrain unfair competition, Accounting for profits. *Equity Pleading and Practice,* Master's report, Decree, Costs. *Res Judicata. Words,* "Boston," "Wafers."

It here was assumed as practically conceded, that the words "Boston Wafers," used to designate an article of manufacture and trade, were merely descriptive and could not be made a valid trademark.

A merely descriptive epithet, which is incapable of becoming a valid trademark, by long and exclusive use in trade may become so associated with a particular class of goods or with the specific product of a particular manufacturer, that the attaching of the epithet to a similar product by a competing manufacturer or seller will have all the effect of a falsehood, unless accompanied by sufficient explanations or precautions to prevent confusion with the goods of the original manufacturer, and, when likely to deceive purchasers, such use of the name may be restrained in equity as unfair competition.

A manufacturer, who by long and exclusive use of a trade name, consisting of words incapable of becoming a valid trademark, has created for that name within a certain territory a secondary meaning which entitles him to protection against unfair competition in its use, is not entitled to restrain the use of such trade name outside the territory within which he has established the meaning on which his rights depend.

Although a master's report in a suit in equity may be modified or reversed or recommitted to the master if any error appears to have been made or if any good reason for such action is shown, yet, unless one of these things is done by the trial judge, the report has the effect that a verdict or the special findings of a jury have in an action at law, and it will be presumed, where the contrary does not appear by the record, that the facts have been found correctly, that proper principles of law have been followed and that all matters have been dealt with rightly.

In a suit in equity the confirmation of a master's report by a final decree makes all findings of fact contained in that report conclusive between the parties to the suit, and these matters are none the less *res judicata* if such final decree was entered by the consent of the parties.

In a suit in equity to restrain unfair competition in the use of a trade name to which the plaintiff is alleged to have established an exclusive right, if the plaintiff seeks an accounting for profits derived from the unlawful use of the trade name, but otherwise demands no damages, and if the plaintiff shows that the defendant received substantial sums of money from sales of goods wrongfully bearing the plaintiff's label or an imitation of it, but it appears that the defendant's general expenses were incurred at least proportionally for such unlawful dealings and that after deducting the proportionate share of such

expenses the unlawful dealings showed no profit, the plaintiff is entitled to nothing by way of profits.

In a suit in equity in which the plaintiff sought an injunction and an accounting for profits alleged to have been obtained by the wrongful acts of the defendant, and the plaintiff established his right to an injunction only as to a part of the acts of the defendant alleged to have been wrongful, and the defendant was shown to have derived no profits from such wrongful acts, costs were awarded to the plaintiff, although he had shown himself to be entitled only to a part of the relief prayed for in his bill, because a part of the defendant's conduct, which the defendant attempted to justify, had been that of a wrongdoer.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 19, 1912, by a corporation organized under the laws of the State of Maine against another corporation organized in the same State, to restrain the defendant from manufacturing or selling any rolls or packages of wafers as or for "Boston Wafers," or from selling any wafers in rolls or packages enclosed in wrappers made in imitation of those used by the plaintiff, for an accounting for profits wrongfully derived by the defendant from a violation of the alleged rights of the plaintiff, and for damages. The bill alleged that by a decree made on August 10, 1911, in a suit in equity in the same court between the same parties, the defendant was enjoined from using the name "Boston Wafers" in New England, in the States of New York, New Jersey, Pennsylvania and Maryland and in the District of Columbia, and the present bill was brought to extend the prohibition to sales outside the territory covered by that decree.

The case was referred to Walter F. Frederick, Esquire, as master. In the previous suit between the same parties the master was John Duff, Esquire, and the decree, which was consented to by the counsel on both sides, was made by *Sheldon,* J.

The following exceptions of the defendant to the master's report in the present case are referred to in the opinion.

"4. To the ruling of the master admitting in evidence against the objection of the defendant those portions of the master's report in the former case which relate to the acts of the defendant in the New England States, the States of New York, New Jersey, Pennsylvania, Maryland and the District of Columbia."

"6. To the findings of the master Nos. 1 to 77 inclusive on the ground that said findings are based exclusively on the report of the said master in the said former case."

"29. To the ruling of the master in finding No. 174 that 'the accounting should include the profits on all sales of the infringing goods wherever made except as limited by the terms of the said agreement' of August 10, 1911. . . .

"30. To the refusal of the master to find, as requested by the defendant, that the fair presumption is that in the States of Alabama, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, North Carolina, North Dakota, South Dakota, South Carolina, Tennessee, and Wisconsin, where there was no competition between the plaintiff and the defendant in the sales of 'Boston Wafers,' the defendant's 'Boston Wafers' were not palmed off on purchasers as the goods of the plaintiff.

"31. To the refusal of the master to find, as requested by the defendant, that the fair presumption is that in the territory where the plaintiff's 'Boston Wafers' have not acquired a secondary meaning, the 'Boston Wafers' of the defendant were not palmed off on purchasers as the goods of the plaintiff.

"32. To the refusal of the master to find, as requested by the defendant, that the fair presumption is that in the States of Washington, Iowa, North Carolina, Missouri, Georgia, Tennessee, Minnesota, Kansas, Nebraska, Kentucky, Montana, Alabama, Louisiana, Mississippi, North Dakota and South Dakota, in which the defendant's 'Boston Wafers' were introduced before the plaintiff's 'Boston Wafers,' the defendant's 'Boston Wafers' were not palmed off on purchasers as the 'Boston Wafers' of the plaintiff.

"33. To the refusal of the master to find, as requested by the defendant, that the fair presumption is that the defendant's wafers wrapped in wrappers bearing the name 'Nawaco Boston Wafers' and used in the outside territory, were not palmed off on purchasers as the 'Boston Wafers' of the plaintiff."

The case came on to be heard by *De Courcy*, J., who at the request of the parties reserved it upon the pleadings, the master's report and the exceptions thereto for determination by the full court.

*P. W. Carver*, (*A. G. Carver* & *O. C. Scales* with him,) for the plaintiff.

*W. K. Richardson*, (*J. L. Stackpole* with him,) for the defendant.

SHELDON, J.   The principal question in this case is whether the plaintiff has the right to restrain the defendant from using, outside of the territory which was specified in the decree made by a justice of this court in the former suit, the words "Boston Wafers" as the name of the articles which it manufactures and sells in competition with the plaintiff.   The answer to this question depends upon well settled principles.

It practically has been conceded in argument that the plaintiff has no exclusive right to the use of these words in connection with its product as a trademark strictly so called.   This is correct. The word "Boston" is merely a territorial or geographical designation; the word "wafers" is nothing more than the ordinary name given to the article of confectionery made by each of these parties.   Neither alone nor together could either one of these words be adopted as a trademark.   This is on the broad principle stated by the Supreme Court of the United States in *Standard Paint Co.* v. *Trinidad Asphalt Manuf. Co.* 220 U. S. 446, that no sign or form of words can be appropriated as a valid trademark which according to its primary meaning may with equal truth and equal right be employed by others for the same purpose.   *Canal Co.* v. *Clark,* 13 Wall. 311.   *Brown Chemical Co.* v. *Meyer,* 139 U. S. 540.   *Columbia Mill Co.* v. *Alcorn,* 150 U. S. 460, 463.   *Kann* v. *Diamond Steel Co.* 89 Fed. Rep. 706. *Postum Cereal Co.* v. *American Health Food Co.* 119 Fed. Rep. 848, 852.   *American Wine Co.* v. *Kohlman,* 158 Fed. Rep. 830. *Cellular Clothing Co.* v. *Maxton,* [1899] A. C. 326.   *S. Chivers & Sons* v. *S. Chivers & Co.* 17 R. P. C. 420.

But it is also true that a merely descriptive epithet or the name of a person or of a place may become so associated with a particular kind of goods, or with the specific product of a particular manufacturer, that the mere attaching of that word to a similar product without more would have all the effect of a falsehood; and in such a case, while the use of that word cannot be absolutely prohibited, it may be restrained unless accompanied by sufficient explanations or precautions to prevent confusion with the goods of the original manufacturer or vendor. *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85.   *Viano* v. *Baccigalupo,* 183 Mass. 160.   *Cohen* v. *Nagle,* 190 Mass. 4, 8, 14.   *Elgin National Watch Co.* v. *Illinois Watch*

*Case Co.* 179 U. S. 665, 674. *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.* 208 U. S. 554, affirming with modification *Hall's Safe Co.* v. *Herring-Hall-Marvin Safe Co.* 146 Fed. Rep. 37. *Bauer & Co.* v. *Distillerie de la Liqueur Bénédictine,* 120 Fed. Rep. 74. *Shaver* v. *Heller & Merz Co.* 108 Fed. Rep. 821. *Royal Baking Powder Co.* v. *Royal,* 122 Fed. Rep. 337. *Wolf Bros. & Co.* v. *Hamilton-Brown Shoe Co.* 165 Fed. Rep. 413. *Wotherspoon* v. *Currie,* L. R. 5 H. L. 508. *Montgomery* v. *Thompson,* [1891] A. C. 217. Even though a word or a combination of words is incapable of becoming a valid trademark, yet if it has by a sufficiently long and exclusive use acquired such a secondary meaning as to indicate in the trade that the goods to which it is applied are made by a particular manufacturer or are put upon the market by a particular vendor, its use by another upon similar goods in such a way as to be likely to deceive purchasers will be restrained as unfair competition; and its use even in its primary meaning will be so limited as to prevent the working of a probable deception by passing off the goods of one maker as those of another. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.* 100 Maine, 461. *Drake Medicine Co.* v. *Glessner,* 68 Ohio St. 337. *Sartor* v. *Schaden,* 125 Iowa, 696. *Dyment* v. *Lewis,* 144 Iowa, 509. *People* v. *Rose,* 219 Ill. 46. *Northwestern Knitting Co.* v. *Garon,* 112 Minn. 321. *Lawrence Manuf. Co.* v. *Tennessee Manuf. Co.* 138 U. S. 537. *American Waltham Watch Co.* v. *Sandman,* 96 Fed. Rep. 330. *Computing Scale Co.* v. *Standard Computing Scale Co.* 118 Fed. Rep. 965, 967. *Siegert* v. *Gandolfi,* 149 Fed. Rep. 100. *Lowe Bros. Co.* v. *Toledo Varnish Co.* 168 Fed. Rep. 627. *R. Guastavino Co.* v. *Comerma,* 184 Fed. Rep. 549. *Gillett* v. *Lumsden Brothers,* 4 Ont. L. R. 300. *Lee* v. *Haley,* L. R. 5 Ch. 155. *Powell* v. *Birmingham Vinegar Brewery Co.* [1896] 2 Ch. 54 and [1897] App. Cas. 710.

The master has found that in some of the States of the "outside territory," that is, the States not covered by the decree in the former case, the words "Boston Wafers" had when this bill was filed acquired such a secondary meaning in the trade as to indicate that the wafers to which these words were applied were the product of the plaintiff, manufactured and sold by it; that this

was the case in Ohio, Michigan, Virginia and portions of West Virginia; but he has not found that in the other States included in the "outside territory" the plaintiff has by its use of these words gained for them the secondary meaning which has been stated. The defendant has applied these words to its own goods in the States which have been mentioned as well as elsewhere, with the intention of diverting to itself the trade of the plaintiff; that is, as we feel bound to interpret the language of the report, with the intention of availing itself of the reputation of the plaintiff's goods and procuring sales of its own goods to purchasers either at wholesale or at retail, who may be led to believe that they are buying goods made by the plaintiff. Under these circumstances, the plaintiff contends that this constitutes unfair competition, against which it is entitled to be protected in the whole of the United States.

In *Cohen* v. *Nagle*, 190 Mass. 4, it appeared that the plaintiff manufactured and sold cigars under the name "Keystone," and that, although this word did not constitute a trademark, it had come to be understood in New England to indicate cigars made by the plaintiff. It was held that he had a right to be protected, at least in New England, against the acts of the defendants, who were applying that name to cigars of their own make. A final decree was entered in the case, enjoining the defendants from using that word in the New England States; and only the defendant appealed from that decree. The decree was affirmed; and it was said in the opinion of the majority of the court that as the plaintiff had not appealed from the decree, it was not open to the defendants to complain that the decree was too narrow and that it should have been made without geographical limitations. But three of the justices considered that as it had not been shown that the secondary or acquired meaning of the word "Keystone" extended beyond New England, the injunction rightly was confined to that territory. That is, three of the justices were strongly of the opinion that one who uses a name, not strictly a trademark, and who has procured for that name a secondary meaning which entitles him to protection against unfair competition in its use, is entitled to such protection only within the territorial boundaries beyond which he has not succeeded in extending the meaning upon which his rights depend; and four justices did not find it

necessary to express any opinion upon the subject. That question now must be decided.

We do not doubt that the plaintiff is entitled to relief within the four States which have been mentioned, unless some of the specific objections which have been made by the defendant are to be sustained. The point is settled in favor of the plaintiff by *Cohen* v. *Nagle, ubi supra.* The case, as to these four States, comes within the general doctrine applicable alike to trademarks and to cases of this kind, that one has a right to be protected in selling his goods against the unfair competition of any others who may seek by imitating his brands or the style of his packages to palm off their goods as his. *Hildreth* v. *D. S. McDonald Co.* 164 Mass. 16. *George G. Fox Co.* v. *Glynn,* 191 Mass. 344. *George G. Fox Co.* v. *Hathaway,* 199 Mass. 99. *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437. *Forster Manuf. Co.* v. *Cutter-Tower Co.* 211 Mass. 219. *Taendsticksfabriks Akticbolagat Vulcan* v. *Meyers,* 139 N. Y. 364. *Gorham Co.* v. *White,* 14 Wall. 511. *McLean* v. *Fleming,* 96 U. S. 245. *American Tin Plate Co.* v. *Licking Roller Mill Co.* 158 Fed. Rep. 690 and 830. *Holeproof Hosiery Co.* v. *Wallach Bros.* 190 Fed. Rep. 606. *Coca Cola Co.* v. *Gay-Ola Co.* 200 Fed. Rep. 720. *Notaseme Hosiery Co.* v. *Straus,* 201 Fed. Rep. 99. *Saxlehner* v. *Apollinaris Co.* [1897] 1 Ch. 893.

As a matter of sound reasoning, it seems difficult to extend the rights of the plaintiff beyond the ground on which those rights are rested. Its whole case depends upon the fact that the words "Boston Wafers" have acquired in the trade a secondary meaning by which they signify not merely or necessarily that the goods were made in Boston (*Wotherspoon* v. *Currie,* 42 L. J. (N. S.) Ch. 130, and L. R. 5 H. L. 508), but that they were made by the plaintiff. Where the words have not gained that meaning, no rights of the plaintiff are infringed by the defendant's use of them. The defendant has the right to imitate the labels and wrappers of the plaintiff where this involves no infringement of a trademark and no attempt to get the benefit of the public's desire to have goods made by the plaintiff. *Flagg Manuf. Co.* v. *Holway,* 178 Mass. 83. Where the secondary meaning of the words was unknown, no purchaser could have understood them in any but their primary sense, and no purchaser could have been deceived

by their use. *Columbia Mill Co.* v. *Alcorn,* 150 U. S. 460, 463. *Parsons* v. *Gillespie,* [1898] A. C. 239. The gist of the action is not the harmless use of the particular words and symbols, but the appropriation of the plaintiff's business. *Rains & Sons* v. *White, Haucke & Co.* 107 Ky. 114. *Banzhaf* v. *Chase,* 150 Cal. 180. And see *Clark Thread Co.* v. *William Clark Co.* 11 Dick. 789; *Baker* v. *Baker,* 115 Fed. Rep. 297; *J. F. Rowley Co.* v. *Rowley,* 193 Fed. Rep. 390, 393. See also the reasoning of Loring, J., in *Cohen* v. *Nagle,* 190 Mass. 4, 16, *et seq.*

In *Carroll* v. *McIlvaine,* 171 Fed. Rep. 125, and (on appeal) 183 Fed. Rep. 22, the protection given to a plaintiff against unfair competition was confined to the territorial limits within which he had carried on his business and gained his rights. So in *Cellular Clothing Co.* v. *Maxton,* [1899] A. C. 326, the court refused to enjoin the use of the words "cellular clothing" in Scotland, because there the words had only their primary signification. To the same effect see *S. Chivers & Sons* v. *S. Chivers & Co.* 17 R. P. C. 420. The same rule was applied between different parts of the same State in *Eastern Outfitting Co.* v. *Manheim,* 59 Wash. 428. So too in *Sartor* v. *Schaden,* 125 Iowa, 696, 704, and *Corwin* v. *Daly,* 7 Bosw. 222. In *Orr Ewing & Co.* v. *Johnston & Co.* 13 Ch. D. 434, the injunction against the defendant was made general, although the plaintiff had sold his goods only in the Indian market; but that was a case of the infringement of a trademark and not of unfair competition merely, and the decision is not applicable here. In *Northwestern Knitting Co.* v. *Garon,* 112 Minn. 321, the plaintiff's business and its consequent right of protection had extended throughout the United States.

We are satisfied that the plaintiff is entitled to relief only against the making of sales under its brand in the States of Ohio, Michigan, Virginia and West Virginia.

As to the wrappers, we are of opinion upon the facts found by the master that the rights of the plaintiff will be sufficiently guarded if the defendant is enjoined from using in the States last mentioned the words "Boston Wafers," or other words or symbols of like effect, in substantially the same language that was used in the final decree entered in the former suit.

It remains to consider the exceptions to the master's report

and the specific questions thereon which have been argued before us.

The record of the former suit rightly was admitted in evidence. The case had been fully heard by the master, and he had made a. comprehensive report in which he had stated his findings upon all the questions of fact that were raised before him. This report stood practically upon the same footing as that upon which the verdict or the special findings of a jury would have stood. It might have been modified or reversed in part or recommitted to the master if any error appeared to have been made, or if any good reason for such action had been shown. But in the meantime the presumption existed that the facts had been correctly found, that proper principles of law had been followed and that all matters had been rightly dealt with. It is enough to cite a few of the many cases which have affirmed this principle. *Pratt* v. *Lamson,* 6 Allen, 457. *Trow* v. *Berry,* 113 Mass. 139. *Jones* v. *Keen,* 115 Mass. 170, 181, 182. *Morrell* v. *Kelley,* 157 Mass. 126. *Kennedy* v. *Welch,* 196 Mass. 592. *Atherton* v. *Emerson,* 199 Mass. 199, 208. *Attorney General* v. *Vineyard Grove Co.* 211 Mass. 596. *Stewart* v. *Hanreddy,* 212 Mass. 340. It was said in *Kyle* v. *Reynolds,* 211 Mass. 110, that the findings of the master "had the weight and effect of a verdict by a jury and could be set aside only for clear error and mistake on his part."

No fault however was found in the former case with the report; but a decree was entered thereon expressly confirming the report and granting relief in accordance with its findings. This was a final decree, and whatever had been in issue between the parties became *res judicata.* *Stone* v. *St. Louis Stamping Co.* 155 Mass. 267. *Corbett* v. *Craven,* 193 Mass. 30. *Pray* v. *Hegeman,* 98 N. Y. 351, 358. *People* v. *Rickert,* 159 Ill. 496. *Bodkin* v. *Arnold,* 45 W. Va. 90. *Smith* v. *Clark,* 26 L. R. A. (N. S.) 953, 960. *Washington, Alexandria, & Georgetown Steam-Packet Co.* v. *Sickles,* 24 How. 333. *Campbell* v. *Rankin,* 99 U. S. 261, 263. *Green* v. *Bogue,* 158 U. S. 478. *Empire State Nail Co.* v. *American Solid Leather Button Co.* 74 Fed. Rep. 864. *G. & C. Merriam Co.* v. *Saalfield,* 190 Fed. Rep. 927. The confirmation of the master's report by the decree made the findings of fact contained in that report conclusive between the parties. *Nash* v. *Hunt,* 116 Mass. 237, 249. *Chicago Lumber Co.* v. *Bancroft,* 57 L. R. A.

910. Nor is it material that this final decree was entered by the consent of the parties. The issues had been judicially considered by the master, and his report had been made to the court. It was like a judgment at law entered by consent of the parties after and upon the verdict of a jury, which, as we have seen, closely resembles the report of a master. Accordingly such cases as *B., C. R. & M. R. Co.* v. *County of Benton,* 56 Iowa, 89, and *Jenkins* v. *Robertson,* L. R. 1 H. L. (Sc.) 117, are not applicable here. The decree is not less conclusive because it was entered by consent. *Horton* v. *Baptist Church,* 34 Vt. 309. *Holmes* v. *Rogers,* 13 Cal. 191. *David Bradley Manuf. Co.* v. *Eagle Manuf. Co.* 57 Fed. Rep. 980. *Webb* v. *Webb,* 3 Swanst. 658. Indeed, but for the reservation contained in that decree, it well might have been contended that it was a bar to the present suit. *Whitman* v. *Boston & Maine Railroad,* 16 Gray, 530. *Foye* v. *Patch,* 132 Mass. 105. *Cromwell* v. *County of Sac,* 94 U. S. 351. *Last Chance Mining Co.* v. *Tyler Mining Co.* 157 U. S. 683. *Jaros Hygienic Underwear Co.* v. *Fleece Hygienic Underwear Co.* 65 Fed. Rep. 424.

After examining carefully the reported evidence and the report itself, we cannot say that any of the master's findings of fact are erroneous. So far as we perceive, the findings were well warranted, and we discover no reason to interfere with them. The evidence as to the earlier use of the name "Boston Wafers" by other parties, or as to the limited extent and character of its use by the plaintiff, was not such as to require the inference that those words had not acquired the secondary meaning claimed by the plaintiff. *Cohen* v. *Nagle,* 190 Mass. 4, 11. *Menendez* v. *Holt,* 128 U. S. 514. *Celluloid Manuf. Co.* v. *Cellonite Manuf. Co.* 32 Fed. Rep. 94. *Brower* v. *Boulton,* 58 Fed. Rep. 888. *Tetlow* v. *Tappan,* 85 Fed. Rep. 774. *Raymond* v. *Royal Baking-Powder Co.* 85 Fed. Rep. 231. *Eiseman* v. *Schiffer,* 157 Fed. Rep. 473. The master was not bound to find, if indeed he properly could have found, that the plaintiff had acquired any exclusive right to the use of the words "Boston Wafers" by reason of those words having come to mean goods made by the plaintiff, in the "outside territory" other than the four States which have been named. But he had a right to find, and we do not criticise his finding, that the words had acquired that secondary meaning in those four States.

The plaintiff does not seek to recover any damages as such. It desires only an accounting for the profits which the defendant has realized from its wrongful sales.

It appears from the master's report that the defendant has made substantial profits from its sales of goods bearing the plaintiff's label or an imitation thereof, unless a deduction is made of a part of its general expenses to be determined by apportioning them in the ratio which its sales of Boston Wafers bear to its total sales. If such a deduction is made, the defendant has obtained no profits from the sales in question.

It has been held by the Supreme Court of the United States that such a deduction should be made in ascertaining the profits realized by the infringer of a patent. *The Tremolo Patent*, 23 Wall. 518. The same rule has been followed since that decision in trademark cases and cases of unfair competition, some of which are collected in *Regis* v. *H. A. Jaynes & Co.* 191 Mass. 245. In the last named case this court declined to follow the rule of *The Tremolo Patent, ubi supra,* deeming it inapplicable to the facts before the court. In the *Regis* case, the defendants were carrying on a large business, of which their dealings in goods bearing the plaintiff's trademark constituted only a small part, and the defendants' general expenses did not appear to have been at all increased by those dealings. Here the defendant's dealings in Boston Wafers have been a substantial and integral part of its entire wafer and lozenge business, averaging about ten per cent thereof; and its general expenses were incurred for this department and its increase and extension just as for any part of its business. The defendant has used considerable and cumulative effort to push and increase these sales, very probably more than it has applied to other parts of its business. While there is no direct evidence on the subject, it seems manifest to us, looking at the master's report, that the defendant's general expenses have been at least proportionately increased by this department. The rule adopted in *The Tremolo Patent, ubi supra,* is the general rule, to be applied where special circumstances do not make its application unjust. *Cutter* v. *Gudebrod Brothers Co.* 190 N. Y. 252. *Rubber Co.* v. *Goodyear,* 9 Wall. 788. *Winchester Repeating Arms Co.* v. *American Buckle & Cartridge Co.* 62 Fed. Rep. 278, 280. *Kissinger-Ison Co.* v. *Bradford Belting Co.* 123

Fed. Rep. 91. *Walter Baker & Co.* v. *Slack,* 130 Fed. Rep. 514.

Nor can we say that the master's finding on this point was erroneous, although undoubtedly there were circumstances pointing in the other direction, and these have been made the most of in the argument for the plaintiff.

Our conclusion must be that on the whole case the plaintiff can recover nothing by way of profits.

The plaintiff has not contended that the evidence referred to in its fourth and sixth exceptions was erroneously admitted, if it was competent, as we think it was, for the defendant to prove the amount of its general expenses.

The result is that of the defendant's exceptions to the master's report the thirtieth, thirty-first, thirty-second, thirty-third and part of the twenty-ninth must be sustained. All the other exceptions of either party must be overruled. We do not understand the defendant to have made any claim that the State of West Virginia should not be treated as an integral whole. If that be so, the final decree will enjoin the defendant from selling or offering for sale in the States of Ohio, Michigan, Virginia and West Virginia any wafers of which the packages bear the name "Boston Wafers," etc., substantially in the language of the final decree entered in the former case between these parties.

Under the circumstances, we are of opinion that the plaintiff should be allowed its costs; for although it has maintained only a part of the claim made in its bill, yet the defendant has contested even this part, and as to this part its conduct has been that of a mere wrongdoer.

A final decree should be entered accordingly.

*So ordered.*