BENJAMIN KAUFMAN *vs.* PHILIP KAUFMAN & another.

Worcester.    November 8, 1915. — March 1, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Unfair Competition.    Trade Name.    Evidence,* Inference, Presumptions and burden of proof.

The mere use by a retail dealer in a certain business territory of a trade name, which another dealer has found highly effective in bringing his goods to the favorable attention of the public in another business territory, constitutes no actionable wrong.

A suit in equity to enjoin the use of a retail trade name and symbols of the plaintiff cannot be maintained where it does not appear that the territory in which the defendant used the trade name and symbols was one to which the plaintiff's trade extended.

From the facts that a retail dealer in hats, widely advertised under a trade name and a symbol and as sold for $1.50, first opened a store in New York City in 1900 and now has forty-one stores in nine different States, including twenty-four in Greater New York, one in Providence and two in Boston, it cannot be inferred that a market for his hats, sufficient to give him the exclusive right to the use therein of his trade name and symbols, reaches to Worcester, in this State, or to Woonsocket in Rhode Island or to New Haven in Connecticut, in the absence of any evidence that he did any advertising in those cities or that any of his hats ever were sold there.

RUGG, C. J.    This is a suit in the Superior Court to restrain the defendants from simulating the plaintiff's trade name and from imitating the general appearance of the plaintiff's stores.    The case was sent to a master, whose report shows the material facts in substance as follows: The plaintiff is a seller at retail of men's hats, who opened his first store in New York in 1900, and who now has forty-one stores in nine different States, including twenty-four in New York and Brooklyn, one in Providence opened in 1908, and two in Boston opened in 1910.    He is not a manufacturer, but has hats made on his orders as to quality and style.    The plaintiff advertised so extensively and in such manner and combination that the "name 'Kaufman' in the way the plaintiff used it in his several stores, considering the style of lettering (back-hand script) with the use of the figures $1.50 and of the words 'The hats they talk about,' became so associated and identified with the plaintiff's business as to acquire a secondary meaning, and that when

so used it came to mean one of the plaintiff's stores." In other words, he had acquired a trade name in connection with his hat business.

The defendants opened a retail hat store in Worcester in 1909, and in New Haven and Woonsocket in 1914. In the conduct of their business in each of these cities, the defendants simulated the plaintiff's trade name by conduct begun in Worcester, not when the store was first opened, but about two years after the plaintiff opened his Boston stores. The master recognizes the difficult question to be whether the plaintiff had acquired any "market" in the cities where the defendants maintained their stores, and in no one of which the plaintiff has or has had a store, and in that connection reports: "There was no direct evidence as to the plaintiff's market for his several stores. The business was entirely retail and the territory covered by his trade was presumably much less in extent than in the case of such a business as was carried on in *Cohen* v. *Nagle*, 190 Mass. 4." There was no evidence that the plaintiff ever advertised in Worcester, Woonsocket or New Haven, that a hat was ever sold to a person living in Worcester from any of the plaintiff's stores, that any person living in Worcester ever heard or knew of the plaintiff's Boston stores, or as to the volume of business done at either of the plaintiff's Boston stores.

The master's finding in view of these facts is this: "I find as a fact (if such finding is justified from the other facts found) that Worcester became a part of the plaintiff's natural market after the establishment of the Boston stores, and that after the defendant Philip changed his signs, they so closely resembled the plaintiff's signs as to be calculated to mislead the Worcester public into believing that the Worcester store was one of the plaintiff's stores, and that thereby the plaintiff was likely to be deprived of a part of his trade. I also find as facts (if such finding is justified from the other facts found) that Woonsocket, which is sixteen miles from Providence, was a part of the natural market of the Providence store, and that New Haven, which is seventy-three miles from New York, was a part of the natural market of the twenty-four New York and Brooklyn stores, and that the plaintiff's trade name was established in Woonsocket and New Haven before the defendants opened their stores there, and that the de-

fendants' signs so closely resembled the plaintiff's trade name that the public were likely to be misled into believing that the defendants' stores were stores conducted by the plaintiff, and that the plaintiff was thus likely to be deprived of trade which fairly belonged to him." *

It was decided in *C. A. Briggs Co.* v. *National Wafer Co.* 215 Mass. 100, after ample review of the authorities and a full discussion of principles, that where a plaintiff has established a trade name which is not strictly a trade mark, as indicating that goods bearing it are put upon the market by him, he is entitled to protection against unfair competition in its use by others only within the territorial boundaries where he has established his trade name by actual commercial transactions, and not outside that territory. As was said by Mr. Justice Sheldon at pages 106, 107, the vendor who has built up a trade name by the use of particular words, "has a right to be protected in selling his goods against the unfair competition of any others who may seek by imitating his brands . . . to palm off their goods as his. . . . Where the words have not gained that meaning, no rights of the plaintiff are infringed by the defendant's use of them. The defendant has the right to imitate . . . where this involves no . . . attempt to get the benefit of the public's desire to have goods [from the plaintiff]. . . . The gist of the action is not the harmless use of the particular words and symbols, but the appropriation of the plaintiff's business." This is the statement of the law which governs the case at bar. *Holbrook* v. *Nesbitt,* 163 Mass. 120. *Hanover Star Milling Co.* v. *Allen & Wheeler Co.* 125 C. C. A. 515. *Munn & Co.* v. *Americana Co.* 3 Buch. 309.

The plaintiff is entitled to relief only on the ground of unfair trade competition or interference with his established rights. The trade name and symbols of the plaintiff cannot extend into regions where his goods are not sold, where he has no customers, and where he has no trade. There can be no recovery unless it appears that there has been a wrongful appropriation by the defendants of trade which belonged to the plaintiff. The mere use of a trade name which one person has found highly effective in bringing his goods to the

* By order of *Sanderson,* J., exceptions of the defendants to the master's report were overruled, the report was confirmed, and a final decree granting the prayers of the bill was entered. The defendants appealed.

favorable attention of the public in one business territory, by another person in another business territory, constitutes no actionable wrong. Actual or probable deception of the public to the harm of the plaintiff is the basis of the action. There can be no unfair competition unless the plaintiff is in fact a rival for the trade which the defendants secure.

The master having found expressly that there was no evidence as to the area from which the plaintiff drew his custom for his several stores, the bald question presented is whether it can be inferred without evidence that two retail hat stores in Boston draw trade from Worcester, twenty-four such stores in New York and Brooklyn, from New Haven in the State of Connecticut, and one in Providence, from Woonsocket, both in the State of Rhode Island, the distance between these several cities being forty-five, seventy-three and sixteen miles respectively.

There is nothing remarkable or peculiar about stores for sale at retail of men's hats. As matter of common knowledge it must be presumed that there are numerous such stores in each of the cities where the defendants do business. Men's hats are ordinary articles of trade of universal use. Those of the plaintiff are all of the uniform price of $1.50. Manifestly the territory from which a retail store draws its custom must be much more restricted than that of a wholesale store or manufactory. Where there is concerned but a single article of men's apparel, of which usually there are not many in use by one person during the same period, of a price not exceeding $1.50, the trade territory of a store or stores in a single city would not as matter of common knowledge extend into other cities.

Doubtless it is not necessary to show, in a case of unfair competition, that particular customers have been diverted, in order that a plaintiff may recover. It is enough if the infringer operates in the territory from which the owner of the trade name draws his patronage. But there must be some evidence to show the facts before it can be inferred that every retail haberdasher's store has a trade circle with a radius of seventy-three miles. It does not seem easy to infer that men would travel from sixteen to seventy-three miles from cities like Woonsocket, Worcester and New Haven to spend $1.50 for a hat.

It was held in *C. A Briggs Co.* v. *National Wafer Co.* 215 Mass.

100, that, although the plaintiff's trade name and commercial territory as to a wholesale selling of confections, comprehended numerous States including Ohio, Michigan, Virginia and West Virginia, it could not be presumed or inferred that use of that trade name by the defendant in the adjoining States of Illinois, Indiana, Tennessee and Kentucky and other neighboring States, was unfair competition, or that the defendant's goods were there palmed off as the goods of the plaintiff, when there was no evidence that the plaintiff's business in fact was carried on in those States. The inference without evidence that retail trade in men's hats extends so far away from the plaintiff's stores into other cities well known as commercial centres, as in the case at bar, seems quite as unwarrantable as the inference held unjustified in the Briggs Company case. *Eastern Outfitting Co.* v. *Markheim,* 59 Wash. 428. The case at bar is plainly distinguishable from *Samuels* v. *Spitzer,* 177 Mass. 226, where there was explicit evidence that the trade territory of the plaintiff's business house, although located in Rhode Island, extended into southeastern Massachusetts. No argument has been addressed to us that any distinction is to be made between the stores of the defendants in Woonsocket, Worcester and New Haven, as to the inferences to be drawn as to their unfair competition. There seems no reason on this record for making any difference between them. It follows that the facts found by the master did not justify the ultimate fact found of unfair competition by the defendants with the business of the plaintiff.

*Decree reversed.*

*Decree to be entered dismissing bill.*

The case was submitted on briefs.

*L. E. Feingold & J. F. Humes,* for the defendants.

*C. H. Derby,* for the plaintiff.