## JOSEPH B. MOORS *vs.* C. EVERETT WASHBURN.

Suffolk.    March 28, 1893. — May 19, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Collateral Security — Pledgee's Interest in Damages for Conversion — Attorney's Fees — Costs — Appeal.*

A party holding a fund against which he knows a claim is made by another as pledgee, although not aware that the pledge extends beyond a specific loan which has been paid, pays over the fund to the general owner at his peril.

If a party who has received a fund against which he knows a claim is made by another as pledgee does not keep it identified, but has the use of it, he properly is charged with interest from the date of the writ.

When a decree is affirmed on appeal, this court usually will not disturb the discretion of the court of first instance as to costs.

The plaintiff in a bill of equity not having appealed, the objection that certain items allowed to the defendant should not have been deducted from the fund in the defendant's hands is not open to him in this court.

BILL IN EQUITY, changed in the Superior Court from an action of contract for money had and received, to establish the right of the plaintiff, doing business under the name of J. B. Moors and Company, to a fund of $750. Writ dated November 25, 1884. After the former decision, reported 147 Mass. 344, a decree for the plaintiff, based upon facts found by the judge by whom the case was originally heard, was made in the Superior Court, on July 15, 1890, by *Aldrich*, J., for the sum of $234.15 and costs. The defendant appealed to this court.

The material facts, as found by *Dewey*, J., by whom the case was originally heard, are as follows.

In 1880 the plaintiff lent money to one Moore, taking as collateral security therefor fifteen bags of wool. The agreement under which the wool was pledged recited that Moore transferred it to the plaintiff to secure the payment of Moore's note, which was described, and contained these words: " It is also understood and agreed by me that the conditions printed or written on the other side, and assented to by my signature, shall form a part of this contract." One of the conditions referred to was this: " Any and all collateral security held by J. B. Moors & Co. for my account, whether under the within contract or otherwise,

may be held and applied by said J. B. Moors & Co. not only as security for the specific indebtedness within mentioned, but also as general collateral security for any and all indebtedness or liability existing, or which may hereafter exist, from me to you, whether previous to the giving of said security or subsequent thereto."

The notes given by Moore to the plaintiff, for the payment of which the wool was pledged, were for $1,464.42 and $655.16 respectively. The larger note was subsequently paid, but the smaller one was renewed from time to time, until, in its final form, it amounted to $830.55. By March 8, 1882, more than enough had been paid by Moore to the plaintiff to extinguish this indebtedness, but meanwhile new advances or loans had been made by the plaintiff to Moore, and on that date there was an indebtedness from Moore to the plaintiff (apart from the loan made on the pledge of the wool) of more than four thousand dollars. In 1881 Moore was adjudged insolvent. The plaintiff having stored the wool in his name with one Pratt as warehouseman, the Boston Heel and Leather Company, at some time previous to May 25, 1881, converted it to its own use. Thereupon Pratt brought an action of trover against that company, and recovered judgment for the value of the wool. In that action the defendant Washburn acted as attorney for Pratt, and the judgment was subsequently assigned to him. The only interest which Pratt had in the wool was his lien as warehouseman, and that has been satisfied.

In June, 1881, after the action of trover was brought against the Boston Heel and Leather Company for the conversion of the wool, it was replevied from that company in an action in the name of Moore, but for the benefit of the plaintiff, and delivered to the plaintiff, who sold it for more than enough to pay the note specially secured by it, and applied the surplus proceeds on Moore's general indebtedness. The plaintiff was one of the sureties on the replevin bond. Judgment was rendered for the defendant in replevin, and a return of the goods was ordered on the same day on which judgment was entered in the action of trover. A settlement was made of both suits, and the judgment in the action of trover was satisfied on discharging the replevin bond, and on the payment of $750 by the Boston Heel

and Leather Company to the defendant Washburn. The plaintiff advised with the defendant Washburn in regard to both suits, and advanced a small sum of money for expenses, and agreed to be responsible to the extent of about $50 for Washburn's services, if a sufficient sum to pay him was not realized from the action of trover. The judge further found that the defendant Washburn knew that the plaintiff was pledgee of the wool, and that he had made the loan to Moore on the specific pledge of that wool as security for the loan; that Washburn agreed that the plaintiff should be paid out of the proceeds of the action of trover, if it proved successful, so much as was required to satisfy the loan for which the wool was pledged, with the proper charges and expenses, if that amount was not realized from the sale of the wool itself; that Washburn did not know of the written agreements between the plaintiff and Moore to secure the general indebtedness of the latter until September 1884, and did not mean to engage that the plaintiff should have the proceeds of the action of trover, if any, to apply on the general indebtedness of Moore to the plaintiff, but the plaintiff intended to hold the wool, and any of the proceeds thereof to which he might be entitled by virtue of his agreement with Moore, to secure the general indebtedness of the latter, and understood as the result of his interviews with Washburn that the proceeds of the action of trover would be paid over to him to be so applied; but that there was no intentional concealment or misrepresentation of the facts as to his claim, nor any intentional waiver of his rights in his interviews with Washburn. The judge further found that by the settlement effected by the defendant Washburn, by which he received $750 in money, he released and discharged the Boston Heel and Leather Company from the balance due on the execution, provided the company would not enforce any claim against Moore and the plaintiff in the replevin suit. By virtue of that settlement, the plaintiff has been relieved from liability for costs and damages in the replevin suit, or that might grow out of it. In July, 1883, the defendant Washburn, having previously made several ineffectual attempts to obtain from the plaintiff a statement of his account, paid to Moore the sum of $93 out of the $750 which he had received.

The judge found that the expenses incurred and disburse-

ments made by Washburn in the actions of tort and replevin amounted to $250, and that $125 would be a fair compensation to him for services performed in the action of trover after his interviews with the plaintiff, and that a fair allowance to him for all charges and claims due from Pratt to him down to the date of the assignment, and for services rendered, would be $200.

*H. L. Harding*, for the plaintiff.

*C. E. Washburn, pro se.*

HOLMES, J. This case was originally an action at law, and afterwards was amended into a bill in equity to establish the plaintiff's rights in and to recover a fund of $750, or that part of it to which he might be entitled. The fund is the proceeds of an action of trover for certain wool, brought by a warehouseman, *Pratt* v. *Boston Heel & Leather Co.* 134 Mass. 300, and is in the hands of the defendant Washburn as attorney. The plaintiff claims under a blanket pledge or mortgage of the wool, made to secure all indebtedness of Moore, the general owner. The case has been before this court on a former occasion, and it is settled by the decision then made that whatever portion of the money does not belong to the defendant Washburn belongs to the plaintiff. 147 Mass. 344. After that decision a decree was made upon the same report which was passed upon by us, charging the defendant Washburn with $234.15 and costs. He appeals.

We presume that the amount of the decree was reached in the following way. The sum of $575 being the amount of the defendant's charges for expenses, services, etc., as found in the report, was deducted from the principal sum, leaving $175. On the last named sum interest was computed from the date of the writ, November 25, 1884, to the date of the decree, July 15, 1890, being five years, seven months, and twenty days. This would be 33.8⅓ per cent, which, neglecting the fraction, would give $59.15. That sum added to the principal gives the amount of the decree. The defendant was not allowed for a payment of $93 made in July, 1883, to Moore, the general owner. This was the only sum not allowed to which the report disclosed any claim on the part of Washburn.

When this sum was paid, the plaintiff had the same right that he has now, as against Moore. Washburn had notice that the

plaintiff made a claim as pledgee, and did not know the amount of his claim.   He was not aware that the pledge extended beyond a specific loan, which in fact had been paid, but he knew that the plaintiff still made a claim.   He had made several requests to the plaintiff for a statement of his account, but had not received it.   Under these circumstances, the court are of opinion that he paid the $93 at his peril, and that this payment properly was disallowed.   The defendant argues that he is entitled to further allowances, but there is no sufficient foundation for them in the report, and it is now too late to go beyond the facts there stated. The parties were content to have a decree framed on those facts, and if the defendant got all to which the report entitled him, he has no ground of complaint.   We see no reason for denying the plaintiff interest from the date of the writ, and costs.   There is nothing to show that Washburn kept this fund identified as a separate trust fund, or that he has not had the use of the money belonging to the plaintiff.   By his answer, he denied the plaintiff's right to any part of the sum.   Furthermore, when a decree is affirmed on appeal, usually we should not disturb the discretion of the court of first instance as to costs.   *The Maggie J. Smith*, 123 U. S. 349, 356.

The plaintiff argues that the greater number of the items allowed to the defendant should not have been deducted from the fund.   But the plaintiff did not appeal, and the objection is not open.   *May* v. *Gates*, 137 Mass. 389.   The allowance seems to have accomplished substantial justice, as the suits in which the services were rendered really were for the benefit of the plaintiff, and it would seem from the report that it was understood between the parties that the expenses of the litigation should be deducted before any payment to the plaintiff.

*Decree affirmed.*