EDWARD S. UNDERWOOD, trustee in bankruptcy, *vs.* COOLIDGE ICE COMPANY, Lynn National Bank, claimant.

Essex.   November 19, 1918. — February 25, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Interpleader.   Practice, Civil,* Exceptions.

In an action of contract by the trustee in bankruptcy of the owner of an ice pond and ice house against an ice company to recover a balance due to the plaintiff for ice sold to the defendant, the defendant filed a petition of interpleader under R. L. c. 173, § 37, in which it admitted that the total sum claimed by the plaintiff was due by it to the plaintiff's bankrupt, and alleged that the debt due from it to the bankrupt was claimed by a certain bank and prayed that the bank might be made a party as claimant. The bank, having been made a party, filed an answer alleging that a subsequent bill of sale of the ice was given to it by the bankrupt, and that thereafter the defendant ice company had sold the ice in question and had received therefor a certain sum of money, which the bank claimed as belonging to it as the owner of the ice under the bill of sale. The plaintiff and the claimant went to trial on the question of the ownership of the ice when it was sold by the defendant ice company. A trial judge found for the plaintiff on this issue, and the claimant alleged exceptions. *Held,* that the exceptions must be overruled, because it was immaterial whether or not there was an error in the trial of the issue of the ownership of the ice at the time of the resale, as that question did not affect the ownership of the fund consisting of the purchase money which the ice company admitted was due from it to the plaintiff.

CONTRACT by the trustee in bankruptcy of Joseph F. Day of Lynn, for $1,484.27, alleged to be due to Day from the Coolidge Ice Company, a corporation.   Writ dated February 28, 1916.

The defendant, the Coolidge Ice Company, filed a petition of interpleader under R. L. c. 173, § 37, representing "That it admits

its liability upon the contract with Joseph F. Day, as set forth in the plaintiff's declaration, in the sum of $1,484.27, and says that the amount of such liability is not in dispute," that the Lynn National Bank, a corporation organized under the laws of the United States, "has made claim upon the defendant for the whole of said amount due under said contract," and that the defendant is not interested in the subject matter of the controversy between the plaintiff and the Lynn National Bank; and praying that that bank might be made a party as claimant and that the defendant, the Coolidge Ice Company, be allowed its costs out of the funds.

The petition was allowed and the Lynn National Bank was made a party as claimant. Thereupon the bank filed an answer as follows: "And now comes the Lynn National Bank and claims said fund now in the hands and possession of the Coolidge Ice Company by virtue of a bill of sale of two (2) ice houses and ice therein by the said Joseph F. Day to the defendant on May 26, 1915, for a valid consideration, and that thereafter said ice, by agreement between said Coolidge Ice Company and your claimant, was sold by said Coolidge Ice Company and the sum of $1,484.27 was received by said Coolidge Ice Company for said ice; that the said Lynn National Bank is entitled to the same under and by virtue of said bill of sale and agreement hereinbefore specified."

In the Superior Court the case was heard by *Hardy*, J., without a jury. The evidence is described in the opinion. The judge refused to rule, at the request of the claimant, that the plaintiff was not entitled to recover, that the title to the ice passed to the claimant and that the claimant was entitled to recover the fund. The judge found for the plaintiff and assessed damages in the sum of $1,484.27. He disallowed the claim of the Lynn National Bank, and ordered that the Coolidge Ice Company be paid costs out of the fund. He ordered that the plaintiff have costs against the claimant. The claimant alleged exceptions.

*R. L. Sisk*, for the claimant.

*H. R. Mayo*, for the plaintiff.

LORING, J. Joseph F. Day before his bankruptcy, being the owner of an ice pond and an ice house, employed the defendant ice company to harvest his ice. It was further agreed between

Day and the ice company that, when the ice had been harvested and stored in the ice house, it should be measured and sold to the ice company at a price specified in the contract. Pursuant to this contract the ice company harvested Day's ice during the winter of 1914–15. On March 19, 1915, the ice had been stored and measured. It had been found that at the rate specified in the contract the price was $3,096.60 and that the cost of harvesting it came to $2,061.45 making the net amount due to Day $1,035.15. There was a balance of $449.12 due from the ice company to Day as the result of a similar sale of the ice of the previous winter. On March 19, 1915, the ice company made a final entry crediting Day with the amount of $1,484.27 made up of these two sums of $1,035.15 and $449.12.

On May 26, 1915, Day assigned the ice in the ice house (harvested during the winter of 1914–15) to the Lynn National Bank by an assignment absolute in form but intended to be given by way of security for a debt then owed by Day to the bank. The bank contended that the ice was delivered to it by Day on that day. This was denied by the ice company. The ice company contended that the ice was in its possession until it was resold by it as will be stated later on.

Subsequently (at a date not stated in the record) Day became bankrupt and the plaintiff was duly elected and appointed the trustee of his estate.

It is alleged in the answer filed by the bank that after May 26, 1915, "said ice, [meaning the ice harvested during the winter of 1914–15] by agreement between said Coolidge Ice Company and your claimant [the Lynn National Bank], was sold by said Coolidge Ice Company and the sum of $1,484.27 was received by said Coolidge Ice Company for said ice."

It is hard to believe that this ice, which if sold by Day to the ice company on March 19, 1915, was sold for $3,096.60, was resold by the ice company later on for less than half that price. It is still harder to believe that the proceeds of that resale amounted to the sum (to a cent) which was due from the ice company to Day for the ice harvested in 1914–15 less the cost of harvesting it plus a balance of $449.12 due from the ice company to Day for ice sold by Day to the ice company during the year 1913–14. Nevertheless on the record we must take that to be the fact.

But the coincidence in the amount of these two funds is not of consequence. The two funds are separate and distinct funds.

The contention of the ice company is that the title to the ice harvested during the winter of 1914–15 passed to it when it made the final credit entry on March 19, 1915.

The contention of the bank is that no title passed to the ice company on March 19, 1915, and that the title to the ice did pass to the bank on May 26, 1915.

To the contention of the bank the ice company replied (in effect though not in terms) that, even if title did not pass to it on March 19, 1915, it did not pass to the bank on May 26, 1915, because absolute transfers of personal property by way of security were made subject to the chattel mortgage act by St. 1913, c. 656, and by the terms of that act an unrecorded transfer (where possession is not delivered to the transferee) is not good against third persons, and it was decided in *Bingham* v. *Jordan*, 1 Allen, 373, that an assignee in insolvency is a third person within the meaning of this provision of the chattel mortgage act and that the same must be true of a trustee in bankruptcy. If this last view of the transaction is correct, the title to the ice vested in the trustee in bankruptcy by virtue of the assignment of all the bankrupt's property to his trustee.

If the first of these contentions is correct, the proceeds of the resale of the ice by the ice company belong to it (the ice company) because the ice was its ice when it was resold.

If the second view is correct, the ice resold by the ice company belonged to the bank and it is entitled to the proceeds of the resale now in the hands of the ice compan

If the third view is correct, the title to the ice vested in the trustee in bankruptcy and the proceeds of the resale now in the hands of the ice company belong to him.

The trustee in bankruptcy elected to adopt the first of these three views and on February 28, 1916, brought an action against the ice company to recover from it the price of the ice, namely, $3,096.60 less the cost of harvesting it, namely, $1,035.15, and in addition the balance due from the ice company for a similar sale in the previous year amounting to $449.12, in all $1,484.27.

The ice company filed an answer in which it admitted "its liability upon the contract" as set forth in the declaration and

said "that the amount of such liability is not in dispute." It then alleged that the Lynn National Bank had made claim upon it for the whole of said amount due under said contract and it prayed that that bank might be made a party as claimant "and that thereupon the rights and interests" of the plaintiff and the bank should "be heard and determined, and that your petitioner be allowed its costs out of the funds, all as provided in chapter 173, section 37 of the Revised Laws." Thereafter the bank became a party defendant and filed an answer in which it alleged that it "claims said fund now in the hands and possession of the Coolidge Ice Company by virtue of a bill of sale of two (2) ice houses and ice therein by the said Joseph F. Day to the defendant on May 26, 1915, for a valid consideration, and that thereafter said ice, by agreement between said Coolidge Ice Company and your claimant, was sold by said Coolidge Ice Company and the sum of $1,484.27 was received by said Coolidge Ice Company for said ice; that the said Lynn National Bank is entitled to the same under and by virtue of said bill of sale and agreement hereinbefore specified."

What the bank laid claim to in this answer was not the two sums of money sued for by the trustee in bankruptcy due from the ice company to Day but the proceeds of the resale of the ice by the ice company. This is stated in terms in the answer of the bank. It is apparent from the answer of the bank that the bank did not lay claim to the two sums for which the trustee had brought suit against the ice company. All that the bank laid claim to was the proceeds of the resale of the ice; and it laid claim to the proceeds of the resale of the ice because it contended that the ice when it was resold by the ice company belonged to it and not to Day.

On the coming in of this answer of the bank judgment should have been rendered against the bank as a claimant to the two sums sued for by the trustee, namely, $1,035.15 and $449.12. The answer showed that the bank was not an assignee of these two sums and that it had not in any other way any right or title to them.

But, in spite of this, the plaintiff and the bank went to trial upon the issue of the ownership of the ice on the day when the ice was resold by the ice company and the case is now before us

on exceptions taken in the course of that trial. The question so tried in no way affected the right of the trustee in bankruptcy to the two sums which he claimed to be due to him as trustee of the bankrupt estate of Day which the ice company admitted by its answer were due from it to him and which the bank by its answer admitted were not owned by it. It is of no consequence whether there was or was not an error in the trial of that question for (as we have said) that question had nothing to do with the issues raised by the pleadings in the case at bar. These exceptions therefore must be overruled and judgment must be entered for the plaintiff in the sum of $1,484.27. Since the ice company did not pay the money into court the plaintiff is entitled to interest. *Converse* v. *Ware Savings Bank,* 152 Mass. 407. *Moors* v. *Washburn,* 159 Mass. 172.

By force of R. L. c. 173, § 37, the ice company is entitled to its costs out of the fund. By force of R. L. c. 203, § 1, the plaintiff is entitled to recover from the bank its costs accruing after the bank intervened as a party in this action.

The entries will be judgment for the plaintiff with interest from the date of the writ, the ice company to have its taxable costs out of the fund, and the plaintiff to recover from the bank its taxable costs from the date when the bank intervened as a party.

*So ordered.*