### W. & H. WALKER, Inc., et al. v. WALKER BROS. CO. *

(Circuit Court of Appeals, First Circuit. March 15, 1921.)

No. 1481.

1. **Trade-marks and trade-names ☞73(2)—Expansion of retail business into wholesale business not unfair competition with wholesaler of similar name.**
   It is not unfair competition for a retail dealer of certain commodities, incorporated under the name of its owners, to expand into a wholesale business and invade the territory of another wholesale dealer in the same commodity having the same name; there being, however, no similarity in the marking on the labels.

2. **Trade-marks and trade-names ☞93(3)—Attempt of single salesman to substitute goods does not establish "unfair competition."**
   Unfair competition is not established by the fact that a single salesman sought to palm off the product of one dealer for that of another, but results from actual misdoings, or from an assembly of circumstances which are calculated in and of themselves to mislead the public or the average trade.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

3. **Trade-marks and trade-names ☞75—Test of "unfair competition" is cheating of public.**
   In some cases of unfair competition, the question depends on the purpose or on the good or bad faith of the dealers, while in others the question is whether the situation in and of itself, without regard to good or bad faith, is calculated to deceive the public; but the test is always whether trade is being unfairly interfered with, and whether the public is being cheated into buying or paying for something which it is not in fact getting.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 623, 65 L. Ed. —.

Suit in equity for alleged unfair trade competition by the Walker Bros. Company against W. & H. Walker, Incorporated, and others. Decree for plaintiff, and defendants appeal. Reversed and remanded, with directions to dismiss the bill.

George R. Nutter, of Boston, Mass. (Jacob J. Kaplan, Greta C. Coleman, and Dunbar, Nutter & McClennen, all of Boston, Mass., on the brief), for appellants.

. Charles D. Woodberry and Robert Cushman, both of Boston, Mass. (Isaac E. Simons and Roberts, Roberts & Cushman, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and AL-DRICH, District Judge.

ALDRICH, District Judge. Fortunately, we have no occasion to consider the merits or the demerits of the product in which the two Walker concerns are dealing.

This is an alleged unfair trade competition case.

It is not one, however, in which either of the parties resorted to similitude of names for unfair purposes, or of similitude of labels, or markings. This is so, because the Pennsylvania Walkers founded a business in 1837 under the name of William & Hay Walker, who were succeeded by their sons William and Hay Walker, Jr., and the business went on as W. & H. Walker, until 1919 (if the date is right), when they were incorporated under the same name.

The Boston Walkers' business was under the name of Walker Bros. Company of Boston.

Each party carried on its business with the name of Walker, or Walkers, in the field of commerce, without knowing of the existence of the other—and, as the District Court says, without any fraud, intentional or unintentional, upon each other, and without any substantial confusion or misleading of the consuming public—until quite recently, when the Boston Walkers discovered that the Pennsylvania Walkers were introducing their goods through jobbers and wholesale dealers.

The defendants used the Kay Chemical Company's label on some of their extracts, and for a time as to products the word "Kay," etc., was chiefly put upon soaps, and to some extent upon extracts, and it is true in shipping some of the extracts to the New England trade, that the Pennsylvania Company used products which had been made ready for the Kay company by pasting the Walker label over the Kay label. We do not think, however, that this cuts any figure in the case.

Speaking generally, for a long period the Pennsylvania company has carried the name of Walker on its extract packages.

It is not suggested that the names of the Pennsylvania labels were materially changed on their products—at least the evidence does not show that they were—except that on the Pennsylvania Walkers' product were superimposed, through the instrumentality of an attractive design, the words:

"Sewickley Home for Crippled Children. W. & H. Walker, Authorized Makers and Distributors."

This, of course, was to attract attention to their product through connecting it with the idea of a charitable purpose; but we see nothing vicious in that feature, because it was a worthy charity, and because it is quite common—and probably permissible—in modern trade to offer inducements to members of the public, through coupons, prizes, and trading stamps, to be handed out upon certain conditions in respect to purchasers.

As to the Walker names, which were the proper, or original, names of the Walkers interested in both instances, such adoption was quite natural and reasonable, and the Pennsylvania Walkers were in the field of commerce a number of years earlier than the Boston Walkers; the Pennsylvania Walkers having started their business in 1904, while the Boston Walkers started theirs in 1915.

[1] The position of the Boston Walkers is that under the circumstances they are entitled to the wholesale field in a particular locality, because they were first in that field under the Walker name, and that the entrance of the Pennsylvania Walkers into the wholesale field, though under a name which they have been rightfully using for a long period in the retail business, is unfair competition, because the Boston concern says, in effect, that their wholesale business should not be interfered with under the circumstances which we have described.

We look upon that view as unsound, because we think that it would interfere with the fundamental rights of reasonable trade competition, and with reasonable and commendable purposes of trade enterprise through expansion. Of course, it is quite true that business enterprises and expansions, through instrumentalities in the wholesale and jobbing fields, might be under such circumstances of bad faith, with or without involving deceptive devices, as to make the competition unfair; but we see nothing in this case to support any such idea as that.

[2] Unfair competition cannot be said to result from the idea that a single salesman sought to palm off one Walker product for another Walker product; and this would be so, whether it was in the wholesale or retail trade.

Unfair competition in commerce results from actual misdoings, or from an assembly of circumstances, which are calculated, in and of themselves, to mislead the public, or, as it is sometimes expressed, "the average trade."

We fail to see anything unreasonable in the efforts of a business concern to expand its enterprise by carrying it into broader fields and into larger and broader ways of doing business. We cannot avoid the view that restraints upon business expansion would be an unreasonable restraint, and an unreasonable hamper, not only of the natural trade ambition, but of the broad right of opening free competition.

[3] It is quite true, in cases of unfair competition, in the usual phase, that the question depends upon the purpose, or upon the question of good or bad faith, while upon another phase the question would be whether a situation, in and of itself, without regard to the

question of good or bad faith; the ways and means are, in and of themselves, calculated to deceive members of the public into buying one thing when they think they are getting another. The questions always are whether trade is being unfairly interfered with, and whether the public is being cheated into buying and paying for something which it is not, in fact, getting. It is true that the defendants' goods as well as the plaintiffs', carried the name "Walker"; but that was a rightful name which they had used for many years. It cannot be seen that this involves deceitful similitude, because it was their own name, and because the goods bore distinctive descriptions and designations of the product of the Philadelphia Walkers.

The learned Circuit Judge sitting in the District Court, conceding that the problem involved in this case has not been exactly covered by any authoritative cases, seeks to support his position through the logic of two cases, one that of the Hanover Case (240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713), and the other that of the Rectanus Case (248 U. S. 90, 39 Sup. Ct. 48, 63 L. Ed. 141).

The first of these cases was a question of trade-marks, and a question of territory, rather than a question of expansion from retail to wholesale, or to wholesale instrumentalities, in a given territory.

The other case, as well, had reference to trade-marks, similitude of names, and to territory. Therefore it does not seem that the logic of the reasoning of those cases is decisive of the situation here.

In this case, the different Walkers were, and are, putting out their products under their own rightful names, properly and innocently adopted, and with labels which indicate the producer, and, generally speaking, the location of the product, or the place where it is put up for the trade.

The case of Cohen v. Nagel, 190 Mass. 4, 76 N. E. 276, 2 L. R. A. (N. S.) 964, 5 Ann. Cas. 553, was one of trade-names, and the question was whether one might adopt the word "Keystone" as the name of his cigar, as against another who had established an extensive cigar business under the trade-name of "Keystone Cigars," and therefore can have no possible bearing upon the question of expansion, as we view it, from retail to wholesale, or wholesale instrumentalities, under a concern's own proper name and markings.

If the California case (Nolan Brothers, 131 Cal. 271, 63 Pac. 480, 53 L. R. A. 384, 82 Am. St. Rep. 346) means that a concern may not extend its business, under its own name, from retail to wholesale, we should not be disposed to follow it. But, whether that case is unsound or not, it had reference to a wholesale business which had been suspended, and where a name was sought to be established in respect to a new and another kind of business.

Now, as to the Regent Shoe Mfg. Case, 75 Neb. 426, 106 N. W. 595, 4 L. R. A. (N. S.) 447. There the question turned upon a wrongful use of a trade-name of similar import to one acquired in a particular locality.

It is apparent that that case turned upon the question of the wrongful adoption of a name of the same, or one of a similar import, and

it was a case involving a territorial question, as well as the wrongful use of the name in similitude in the same line of business.

Therefore it is difficult to see that it applies to the situation before us, which is one of expansion under a concern's own proper name, with undeceiving labels and advertisements, as to retail and wholesale.

We think the decree below should be reversed, and that the complaint should be dismissed.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to dismiss the bill, with costs, and the appellants recover their costs of appeal.