## HARAD et al. v. SEARS, ROEBUCK & CO.

### No. 10609.

United States Court of Appeals
Seventh Circuit.

April 10, 1953.

Rehearing Denied May 28, 1953.

Frank H. Marks, Charles Lederer, Maurice B. Wolf, Daniel J. Gluck, Leo H. Arnstein, and Lederer, Livingston, Kahn & Adsit, Chicago, Ill., for appellant.

Harold R. Woodard, Ralph G. Lockwood, and Lockwood, Galt, Woodard & Smith, Indianapolis, Ind., for appellees.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

The plaintiffs, Charles F. Harad and Sara E. Harad, his wife, co-partners, who will be hereinafter referred to in the singular as Harad, brought suit in the United States District Court for the Southern District of Indiana against the defendant, Sears, Roebuck & Company, hereinafter referred to as Sears, to recover for alleged unfair competition, trade mark infringement, and for other relief.

Plaintiffs contended below, and repeat here, that the defendant Sears was guilty of unfair competition in advertising and selling a truss manufactured by a different concern, because of the use of advertising features which were copied from or a duplication of features that had theretofore been used to advertise plaintiff's truss; second, that plaintiff's trade mark consisting of the word Sportsman within an oval was infringed by a trade mark consisting of a photographic reproduction of a

runner within an oval surmounted by the words Active Man; and third, that substantial evidence justified the assessment against the defendant of treble damages.

The defendant Sears, on the other hand, contended below and repeats here: first, that there was no trade mark infringement; second, that the plaintiff had no exclusive rights in advertising features used to sell its truss by the retailers to whom they had distributed it, including Sears; third, that the plaintiff failed to prove that Sears had actual notice of the registration of the trade mark involved, 15 U.S.C.A. § 1111; fourth, that plaintiffs showed no actual confusion or deception of customers or of the public; and fifth, plaintiffs should be denied equitable relief because they made false and misleading representations in the advertising issued by them.

After trial, without a jury, the District Court entered a decree granting Harad a perpetual injunction, ordering an accounting of actual profits and damages in Harad's favor, and awarding compensation in treble the amount found to be due to it on said accounting. In this appeal Sears is seeking to reverse that judgment.

It appears that in 1946 Harad started developing a truss for use by persons afflicted with hernia and began to market the same. In its correspondence with different sales organizations, Harad began in September of 1946 to use the words Sportsman Athletic to identify its truss. The contracted form of the alleged trade mark was the word Sportsman within an oval. Harad received orders for this truss as early as May 27, 1947. It appears that the first order from the defendant Sears was received in August, 1947. The contract with Sears had been brought about by a salesman, Louis P. Mack, who had been employed by Harad and who was a personal friend of A. J. Steier, a buyer for the defendant Sears, in charge of its sickroom and invalid supplies department. This same Louis P. Mack also sold on behalf of Harad to the mail order house of Montgomery, Ward & Company. The record indicates that his activities in connection with the Harad truss was confined to these two mail order houses.

During the years 1947 to 1950 inclusive, and up to March 1951, when the trial in this cause occurred, Harad manufactured and sold substantially the following number of its trusses: in 1947,—3,078; in 1948,—19,079; in 1949,—27,669; in 1950,—13,035, and in 1951—1,084. The sales were made to the Harad retail outlets, such as drug stores and to mail order houses, including Sears and its retail stores.

Harad advertised its trusses throughout the United States commencing in the spring of 1947. This included newspaper advertising, half the cost of which was borne by Harad and half by the various drug stores and similar customers; several thousand display cards, which were distributed by Harad to the Sears retail stores and other customers throughout the United States; in addition several thousand advertising streamers were paid for and distributed by Harad to its customers. It also ordered many newspaper advertising mats. These were distributed to and used by various drug store customers throughout the United States, as well as by the Sears retail stores. The display cards and streamers and advertising mat each bore Harad's trade mark Sportsman printed in an oval.

Exclusive of the sums credited to Sears, Harad expended more than $58,000 in advertising its product. This amount of course represented but fifty percent of the total cost of advertising, and is exclusive of the sums paid by Harad for Sears retail store advertising.

Charles F. Harad himself spent a substantial amount of time and money assisting the various retail outlets, including Sears retail stores, in the promotion and sale of the truss manufactured by his company. Until about May of 1948 Harad packaged all its trusses, including those sold and delivered to the Sears retail stores and mail order houses, in a red and black carton. These cartons had conspicuously printed thereon in two places, the firm name "Industrial Engineering Associates" and the address of Harad, together with its trade mark Sportsman within an oval.

In May, 1948, a second carton of blue and white was ordered by Harad. Thereafter, substantially all of the trusses de-

livered to the mail order houses, as distinguished from those delivered to the Sears retail stores and other customers, were packaged in the blue and white carton. However, with relatively few exceptions, all Harad trusses thereafter shipped to Sears retail stores were packaged as before in red and black cartons, bearing Harad's business name in two places thereon. Until about May, 1948, Harad inserted in all cartons bearing his trusses a two-leaf folder and a direction card. The firm name and address of Harad, together with his trade mark, were printed on such folders. In May, 1948, Harad had printed a three-page folder to take the place of the two-page folder and direction card. These three-page folders likewise had the firm name and the address of Harad with its trade mark Sportsman within an oval.

In about May, 1948, Harad also had printed a second three-page folder. This did not bear Harad's firm name nor his trade mark. Instead the words Sears Approved Athletic Truss were printed thereon. Regardless of which carton was used to package the Harad truss, every truss inserted therein had imposed on it the Harad trade mark Sportsman within an oval.

Commencing in the spring and summer edition of Sears 1948 catalogs, Harad's truss was prominently advertised. They were also advertised in the subsequent semi-annual catalogs of Sears which appeared in the record as exhibits. In each of the Sears catalog advertisements there was prominently displayed illustrated cuts of the Harad truss. Associated therewith was the slogan For The Active Man. This slogan was identical with that printed upon Harad's red and black cartons, which cartons had also printed thereon in bold type the firm name and address of Harad.

Commencing with Sears spring and summer 1949 catalog, the advertisement of Harad's truss included several pen and ink sketches which were identical with certain pen and ink sketches printed on the three-page folders already described, bearing the Harad firm name and address, as well as the trade mark. These sketches were originally posed for by Mr. Harad

himself, and were paid for by him. In said spring and summer general catalog of 1949, Harad's truss advertisement included an illustrative cut of the trusses which was like that displayed in the three-page folder. Also beginning with the spring and summer 1949 general catalog, the advertisement of Harad's trusses included several descriptive statements in columnar formation preceded by a dot. The contents of the statements and pattern of their arrangement duplicated that which was employed by Harad in its three-page folder.

Harad urged insistently that it was the first to use in combination the foregoing features; namely, a prominently illustrative cut of his truss in a particular manner and original arrangement; pen and ink sketches showing men at work and at play; descriptive statements in columnar formation preceded by a dot; and a slogan For The Active Man. Harad insists that while Sears may have used some or all of the foregoing features separately, it never used all of them in combination prior to the introduction of the Harad truss. The court in its findings of facts adopts this contention of Harad's. Nevertheless the undisputable documentary evidence shows the direct contrary. In the Sears catalog for 1943, in evidence as defendant's exhibit 29, the trusses then handled by Sears, and therein advertised, showed all of the features claimed on behalf of Harad except the slogan regarding "active life." In the Sears 1945 catalog, in evidence as exhibit 79, all the features mentioned were claimed for the trusses therein advertised by the defendant, Sears. In exhibit 21, the catalog for 1946, all the features are again found in the trusses advertised except the descriptive statements in columnar formation preceded by a dot. Defendant insists, and the uncontroverted documents bear out its claim, that Harad not only obtained the mentioned features from copies of Sears catalogs issued prior to 1947, but also that Harad actually lifted from the same series many other features used later in publicizing the Harad trusses. This is demonstrated, appellant claims, by the following examples of features used by Harad. First, a pen and ink sketch showing a golf player,

used by plaintiff in its three-leaf circular, is identical to a drawing of a golfer appearing in defendant's exhibit 21, which is Sears 1946 catalog. Second, the line drawing of a human anatomy, on Harad's three-leaf circular, appears to duplicate similar drawings in Sears catalogs for 1943 and 1945. Third, the columnar statement of features preceded by a dot is also found in the Sears catalog for 1943 and 1945. And finally, that the Harad slogan Ruptured? Wear a Sportsman Athletic Truss, found in the plaintiffs' three-leaf circular, bears a remarkable resemblance to the slogan used by Sears in its 1943 catalog. Are You Ruptured? Why Not Wear A Sears Truss. In the 1946 and 1947 catalogs Sears said in advertising its trusses: "Ruptured? You can still lead an active life—Wear a Sears approved truss. Perfect fitting for your comfort."

We are therefore obliged to conclude that the findings of the District Court to the effect that extensive advertising by Harad throughout the United States of the said combined features; namely, sketches showing men at work and play; the slogan for the active man; descriptive statements in columnar formation preceded by a dot; and the general arrangement of said exhibited features has acquired a secondary meaning, are clearly erroneous. The findings must of necessity rest exclusively on the documentary evidence mentioned and the undisputed contents of the advertising matter of Harad and Sears. Orvis v. Higgins, 2 Cir., 180 F.2d 537–539.

In December, 1949, Harad was notified by Steier that a truss coming from a different source was to be used in all of the Sears spring and summer 1950 catalogs, except those published in Philadelphia and Boston. In the spring and summer 1950 catalogs, pursuant to such notice, Sears advertised exclusively a truss from another source than Harad. This other source was Louis P. Mack, who, as we have already said, had been employed by Harad to sell its trusses to mail order houses. He had severed his relationship with Harad in July, 1949.

The Mack truss was similar in shape and outline to the Harad truss; its price was $7.49, whereas the Harad truss had been sold by Sears for $8.99. Mack trusses had imposed on the shield portion thereof, in the same relative location where Harad's trade mark was imposed, a representation or drawing of an athlete or runner, within an oval, and accompanied by the words Active Man. In advertising said Mack truss, Sears used a cut showing a truss arranged in substantially the same manner as had been used in the illustration of the Harad truss. In addition, Sears advertising of the Mack truss included the slogan For The Active Man, and also included pen and ink sketches of men at work and play, descriptive statements in columnar formation preceded by a dot, and an arrangement and layout of each of the features relative to each other similar to that used in advertising the Harad truss.

The cartons in which the Mack trusses were sold by Sears were substantially identical to those in which the Harad truss had been sold, through Sears mail order house. Enclosed within the substitute truss carton was a three-page folder.

This folder had printed thereon certain pen and ink sketches which were substantially the same as the pen and ink sketches printed on the three-page folder enclosed with the Harad trusses.

The record discloses that the Mack truss is manufactured by the Active Man Truss Company, which is operated, as we have said, by Harad's former salesman, Louis P. Mack. It should be noted that neither the Active Man Truss Company nor Louis P. Mack were made parties defendant to these proceedings. It appears from the evidence that on August 17, 1948, Harad filed application for registration of the mark Sportsman Athletic Truss on the principal register under the 1946 Trade Mark Act. The file wrapper shows that on September 23, 1949, such registration was refused by the Trade Mark Examiner "for the reason (inter alia) that the word Sportsman is descriptive of the goods." On December 2, 1949, Harad shifted the registration to the

Supplemental Register under the 1946 Act and took no further action to register on the Principal Register as allowed by section 2(f) of the Act for marks which have "become distinctive of the applicant's goods in commerce", that is to say, acquired a secondary meaning. On October 19, 1950, Harad filed the required statement and declaration to show use of his mark for a year preceding filing of his application for registration on the Supplemental Register, in which Harad disclaimed the words Athletic Truss apart from the mark. On December 5, 1950, Harad, at the request of the Patent Office, deleted such disclaimer. On March 20, 1951, more than one year and two months after Harad filed his complaint in this action, and one week before the trial thereof, a federal trade mark registration was issued to Harad on the Supplemental Register covering the notation Sportsman Athletic Truss.

The trial court found among other things:

30. "The aforementioned substitute trusses sold extensively by the defendant commencing in or about January, 1950, had embossed centrally of the shield portions thereof a representation of an athlete within elliptical frame accompanied by the words Active Man. Said pictorial representation and said words are a colorable imitation of plaintiffs' trade mark Sportsman Athletic Truss within an elliptical frame, and are so similar thereto as to be likely to deceive and confuse the purchasing public into believing that said substitute trusses had their source of origin in plaintiffs or came from the same source of origin as plaintiffs' trusses."

Finding 31. "The natural and probable tendency and effect of the sale by defendant of said substitute trusses bearing said pictorial representation and said words is to deceive and confuse the purchasing public into believing that said substitute trusses had their source of origin in plaintiffs; or

that they came from the same source of origin as plaintiffs' trusses."

In other words, the trial court found that the photographic representation of the figure of a male runner surmounted by the words Active Man is an imitation and infringement of the printed word Sportsman.

■ Exhibits in evidence before the court in this case disclosed that such photographic representations are common in the advertising of such items as trusses. A large truss manufacturer used the word Winner in association with a representation of a runner within a circle. So, too, the word Champion in a circle was granted registration, and in another case the photographic reproduction of a discus thrower was registered. In fact, authorized exhibits put in evidence by the defendant showed that the reproduction of figures of athletes are very common in advertising of this class of goods. As we have already pointed out, the words Active and Active Life were frequently used by Sears prior to Harad's entry into the field. We feel, on consideration of all the evidence in this record, that a mistake has been made and that the findings of the trial court in this regard are clearly erroneous. Cf. United States v. United States Gypsum Co., 333 U.S. 364, 367–395, 68 S.Ct. 525, 92 L.Ed. 746.

■■ We are further unable to agree with the trial court's finding of fact 36 as to the effect that "actual confusion and mistake on the part of the public is established by the evidence."

That finding is based upon two letters offered in evidence by Harad. The first letter bears date of January 13, 1951, more than one year after plaintiff had instituted this suit and only about one month prior to the actual trial thereof. Nowhere in that letter is there any indication whatsoever that the buyer, desiring to buy the plaintiffs' truss, was actually misled into buying the Mack truss. The writer stated his preference for the plaintiffs' truss pads and his preference for the Mack truss belt and made inquiry as to whether plaintiffs could supply him with their truss pads. The mere fact that the letter was written to

plaintiffs does not in any way indicate that the writer confused the sources of the two trusses.

The second letter from Frank C. Campbell bears no date. This letter clearly indicates that the writer was not actually confused as to the respective manufacturers of the Sportsman and Active Man trusses, the writer stating that the "maker of the Active Man truss on the circular shows their address as Chicago." He stated that at one time he purchased a Sportsman truss from defendant's store, at Pittsburgh. That recently he went to defendant's store to look for a smaller size truss and also to procure new pads for his truss; that he was shown and purchased the new type of truss called Active Man, and that he recognized that the new truss was not the plaintiffs'. He pointed out in his letter the various differences in the trusses.

In our opinion the finding by the trial court that actual confusion on the part of the public is established is clearly erroneous. Isolated cases of confusion do not justify a finding that actual confusion is established nor warrant the entry of a judgment for damages. Cf. Callman Unfair Competition, vol. 2, p. 1279; W. & H. Walker v. Walker Bros. Co., 1 Cir., 271 F. 395–397.

For the reasons heretofore given, our examination of this record has convinced us (1) that Sears preceded Harad in the use of the advertising features claimed by Harad to be its own; (2) that the picture of a runner within an oval surmounted by the phrase Active Man is not a substantial duplication or reproduction of the printed word Sportsman within an oval; (3) that no actual confusion on the part of the public is established by the evidence, and that Sears has not been proven guilty of unfair competition.

We find it altogether unnecessary to consider the point that Harad was guilty of misrepresentation in its advertising, and should therefore be denied relief.

The judgment of the District Court is reversed.