MacLeod-Mancuso, Bonnie H., J.
This case arises from the alleged unauthorized use of Kenneth M. Hanna’s (“Ken Hanna”) name, image and likeness by the defendant Ken’s Foods, Inc., (“KFI”). Michael Hanna, Ken Hanna’s son, has brought this suit on behalf of his father’s estate. The matter comes before this Court on the parties’ cross motions for summary judgment on the plaintiffs claims against KFI. The outstanding counts against KFI include: (I) Violation of G.L.c. 110, §4, seeking monetary relief; (III) Violation of G.L.c. 110, §4, seeking declaratory relief; (V) Violation of G.L.c. 110, §4, seeking injunctive relief; (VII) Unjust Enrichment; (IX) Violation of G.L.c. 93A, §11; (X) Unfair Competition [Ken Hanna]; and (X3) Unfair Competition [Legal Representatives of the Estate of Ken Hanna). For the reasons stated herein, KFI’s Motion for Summary Judgment is ALLOWED as to all counts and the Plaintiffs Cross Motion for Summary Judgment is DENIED as to all counts.

BACKGROUND

In the early 1940s, Ken Hanna and his wife Florence Hanna purchased a restaurant in Framingham, Massachusetts known as McHale’s Diner. The restaurant’s legal name at the time was Cafe 41. In 1954, the Hannas legally changed the name of their restaurant to Ken’s Steakhouse, Inc. (“KSH”). The restaurant proved to be a successful business venture for the Hannas. By all accounts, Ken Hanna’s charm and affability in his capacity as a host was a substantial reason for the restaurant’s success. Additionally, the restaurant’s salad dressings had garnered some local renown and had grown in popularity among the restaurant’s patrons.
In 1958, Ken and Florence Hanna along with Frank Crowley, a grocery store executive, and his wife, Louise Crowley, formed a corporation under the name Ken’s Food, Inc.[2] KFI was established with the intention of manufacturing, packaging and selling commercially the popular salad dressings as well as other food products. The four original founders each received a quarter share in the newly formed corporation.[3] In May 1958, Ken Hanna wrote a letter to the Massachusetts Department of Corporations, which stated:
I, Kenneth M. Hanna majority stockholder of “KEN’S STEAKHOUSE, INC.” and commonly known and doing business as “KEN’S” authorizes the use of the name “KEN’S FOOD, INC.” to the corporation recently formed and seeking the use of that name. My wife and I are majority stock holders of the corporation formed and known as “KEN’S FOOD, INC.”
Ken Hanna held the position of President of KFI from its founding until 1983, and, thereafter, served as Chairman of KFI’s Board of Directors until 1992. In *469 short, KFI has proven to be a successful business venture as well. For example, in 2001 KFI claims to have shipped $87.8 million dollars worth of salad dressing products throughout 74% of the U.S. market.
In 1969, Morris Goldberg (“Goldberg”), the Hannas’ personal tax consultant calculated the value of the Hannas’ KFI stock. Goldberg determined the value of the Hannas’ stock in KFI to be $222,800. Included in Goldberg’s estimate was a determination that KFI’s ‘Trade name and Company Name value” was $43,600. Goldberg stated in a letter to the Hannas that the $43,600 estimate included the value of “[t]he giving up of the use of the name ‘Ken’s Foods.’ ”
On April 8, 1970, Florence Hanna sold seventeen of her twenty-five shares in the corporation. In June 1973, Ken and Florence Hanna sold their remaining shares in KFI to their son, Timothy Hanna, and their son-in-law, Joseph Shay, for $155,000. This sale price was based on the valuation provided to the Hannas by Goldberg, which was lowered slightly due to Florence Hanna’s previous stock sales, which had extinguished the Hannas’ controlling interest in the company, thereby reducing the value of the Hannas’ stock.
While Ken Hanna was a stockholder and/or officer of KFI he recorded a number of advertisements for the company’s products. Ken Hanna also appeared in numerous print advertisements promoting KFI’s products. These advertisements generally described the history of KFI, including Ken and Florence Hanna’s role in the founding and development of the corporation. Additionally, the labels affixed to KFI’s products use Ken Hanna’s name and include a statement that reads, “Satisfaction or your money back from Ken.” This label has been used on KFI’s salad dressings for approximately thirty years and continues to be used today. At the time that these advertisements and labels were initially recorded or printed by KFI, Ken Hanna signed shareholder meeting minutes, which “ratified, approved, and adopted [the actions of the officers and directors of KFI] as and for the action of the Corporation.”[4]
In 1979, KFI registered the trademarks “Ken’s” and “Ken’s Steak House” with the U.S. Patent and Trademark Office. In 1985, KFI and KSH jointly opposed a trademark registration by a third party, “Ken’s Pizzeria.” According to a deposition given by KFI’s and KSH’s joint counsel, William Scofield (“Scofield”), KFI and KSH jointly alleged that the trademark “Ken’s” had been used as early as the 1940s. KFI and KSH were apparently successful in their opposition to the third party’s registration of its trademark. KFI and KSH are presently engaged in a separate legal dispute in federal court regarding the use of the trademarks “Ken’s” and “Ken’s Steak House.”
In November 1995, Ken Hanna died. Michael Puzo (“Puzo”), an attorney, was named the administrator of Ken Hanna’s estate. In 1997, Michael Hanna requested information from KFI regarding its authority to use Ken Hanna’s name to market its food products. KFI claimed to have authority to use Ken Hanna’s name and referred Michael Hanna to its trademark registration rights. In 2001, believing that KFI lacked the proper authority to use his father’s name to market its products, Michael Hanna requested that Puzo bring legal action against KFI on behalf of Ken Hanna’s estate. Subsequently, Puzo declined to bring suit against KFI based on KFI’s claim of lawful authority as well as the expected expense and complexity of such a suit. Michael Hanna, unhappy with Puzo’s decision, brought a number of claims against KFI on behalf of his father’s estate under G.L.c. 230, §5, which are the subject of the parties’ cross motions for summary judgment.

SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The mere assertion of a genuine factual dispute by the nonmoving party, “absent factual material upon which the assertion might be proved, is not sufficient to defeat summary judgment.” Massachusetts Mun. Wholesale Elec. Co. v. City of Springfield, 49 Mass.App.Ct. 108, 113 (2000) (additional citations omitted).

DISCUSSION

Count I, III and V: Violation of G.L.c. 110, §4;

[5]

 Count IX: Violation of G.L.C. 93A, §11

Counts I, III and V of the plaintiffs complaint directly allege that KFI has violated G.L.c. 110, §4, respectively seeking monetary, declaratory and injunctive relief. Similarly, Count IX, which alleges a violation of G.L.c. 93A, hinges on a derivative finding that KFI has violated G.L.c. 110, §4. This Court finds, as a matter of equity, that KFI has not violated G.L.c. 110, §4. Accordingly, all of the aforementioned plaintiffs claims, which depend on a finding that KFI violated G.L.c. 110, §4, must fail as a matter of law.
KFI has correctly directed this Court’s attention to the case of Caines v. Caines Coll., of Physical Culture, Inc., 247 Mass. 402 (1924), for guidance on these *470 counts. In Caines, the plaintiff, Richard Caines (“Caines”), had established in 1904 and subsequently incorporated, in 1907 the Caines School of Physical Culture (“Caines School”). Id. at 4Ó4. Shortly after incorporation, Caines sold “the business . . . rights, franchises, and good will of the business now owned by . . . [him], known as Caines College of Physical Culture” to the new corporation for $9,600 in capital stock. Id. Following this transaction, Caines continued his affiliation with the school by serving as its president, treasurer, general manager and director. Id. During his affiliation with the Caines School, Caines was active in its promotion. Id. Caines signed multiple documents using the Caines School’s letterhead and also signed the stock certificates issued in the corporation’s name. Id. at 405. Caines was discharged from the Caines School in 1920, though he retained his stock in the company. Id. at 404.
Subsequently in 1923, Caines sued the Caines School pursuant to G.L.c. 110, §4, requesting injunctive relief prohibiting the company’s continued use of his name. Id. at 403. A trial court dismissed Caines’s claims. Id. at 403. On appeal, the Caines Court affirmed the trial court’s dismissal of Caines’s claims, declaring it is “manifest that it would be unjust and contrary to equity and fair dealing to give the plaintiff the relief he requests.” Id. at 405. The Caines Court cited four distinct factors supporting dismissal: (1) the Caines School was formed under Caines’s direction: (2)Caines had promoted the Caines School under its corporate name; (3) the name “Caines" had become identified by the public with the Caines School’s pursuits and Caines had approved and directed the use of its corporate name; and (4) Caines had signed the corporation’s stock certificates, which bore his name as president and treasurer, and, thereafter, promoted their sale to the general public. Id.
Ken Hanna’s relationship with KFI is analogous to Caines’s relationship with the Caines School. Taking each of the factors cited in Caines in turn:
(1) Ken Hanna was one of four founders who directed the formation of KFI. Albeit for only a few weeks, Ken Hanna held the largest share of KFI stock at its inception.
(2) Ken Hanna actively promoted KFI’s salad dressings by appearing in radio and print advertisements. Ken Hanna also condoned and approved of the use of his name on labels and other print advertisements as a founder of the corporation and throughout his tenure as an officer, stockholder and Chairman of KFI’s Board of Directors.
(3) Although this Court may not make a conclusive determination, the name “Ken’s” has likely assumed a secondary meaning and has become identified with KFI as well as KSH.[6] The public has likely come to understand that “Ken’s” refers to the corporation KFI rather than the individual Ken Hanna. As noted above, Ken Hanna, during his lengthy affiliation with KFI, actively supported KFI’s objective of making KFI’s salad dressing a familiar and popular product for consumers. KFI has been careful to use Ken Hanna’s full name only in relation to the history of the formation and development of KFI. Section 4 of G.L.c. 110 does not prohibit a corporation from informing consumers about the history of its development or its predecessors in interest. See Martin v. Bowker, 163 Mass. 461, 462 (1895).
The plaintiff has alluded to a “guarantee” appearing on KFI’s labels that are affixed to its products, which reads “Satisfaction or your money back from Ken.” Consumers may understandably assume that this “guarantee” references Ken Hanna individually given the backdrop provided by KFI in its admitted efforts to inform the public regarding Ken Hanna’s early role in KFI’s development. It is undisputed, however, that this “guarantee” has appeared on KFI’s products for more than thirty years. Ken Hanna had ample opportunity during his lifetime to raise any concerns he might have had with the use of his name on these labels. Further, the preceding and following factors demonstrate that he approved of such usage. It would be inequitable to preclude KFI’s continued use when such use does not differ in any appreciable way from KFI’s longstanding use. This is particularly true because Ken Hanna did not dispute the use of his name in KFI’s advertisements during his lifetime. These complaints have been raised by a representative of his estate.[7]
(4)Ken Hanna expressly approved of KFI’s usage of his name in his letter to the Massachusetts Department of Corporations. He also impliedly approved of such usage when he affixed his signature to the stockholder meetings minutes, which indicated approval of the conduct of KFI’s business. Such approval encompassed KFI’s representation of its products in advertisements and on its labels. Ken Hanna signed multiple documents as the President of KFI and as a shareholder in KFI stock, which aligned his interest with that of KFI just as Caines had done with the Caines School.
The facts presented by the admissible evidence before this Court are equivalent to the facts which were before the Caines Court. This equivalence mandates that, as a matter of equity, the plaintiffs claims hinging on a violation of G.L.c. 110, §4 must be dismissed. Caines, 247 Mass. at 405. Moreover, dismissal in this case is even more warranted than in Caines because: (1) a legal representative of his estate, rather than Ken Hanna himself, is seeking relief; (2) this action was brought approximately eleven years after Ken Hanna terminated his affiliation with KFI in contrast to the three years Caines waited to bring suit; (3) Ken Hanna’s more common first name is at issue; and-(4) Ken Hanna enjoyed a much lengthier affiliation with KFI than Caines enjoyed with the Caines School. To allow recovery based on Counts I, II, III or IX would *471 manifestly be “unjust and contrary to equity and fair dealing.” Id.

Count VII: Unjust Enrichment

Michael Hanna, on behalf of his father’s estate, has also brought a single count against KFI for unjust enrichment based on the use of his father’s name and likeness in advertising KFI’s products. To prevail on such a claim, KFI must prove that (1) Ken Hanna conferred a measurable benefit upon KFI and (2) that Ken Hanna held a reasonable expectation that he would be compensated by KFI for conferring such a benefit. See Bolen v. Paragon Plastics, Inc., 747 F.Sup. 103, 106-07 (D.Mass. 1990), citing Douillette v. Parmenter, 335 Mass. 305, 307 (1957) (additional citations omitted). The plaintiff has failed to present any admissible evidence which demonstrates an expectation on the part of Ken Hanna that he would be compensated by KFI for the use of his name or likeness.
Evidently, Ken Hanna received substantial remuneration for the usage of his name while he owned stock in KFI. Ken Hanna, as a founder of the company and owner of a 25% interest in the company directly benefited from the growth of KFI while he owned this stock. After Ken Hanna sold his stock in 1973, he continued to serve as KFI’s President, thereby also continuing to benefit from the financial growth of KFI. When Ken Hanna sold his share of KFI to his children, the valuation of his stock included a premium for the authorization to use the name “Ken’s Food, Inc.” Even if one could infer an expectation of compensation, it is evident that any benefit Ken Hanna expected was realized in the growth of KFI and the subsequent sale of his stock. Notwithstanding these facts, no evidence has been submitted from which a juiy could infer that Ken Hanna expected any compensation for the use of his name or likeness in KFI’s advertising or on KFI’s labels. The plaintiffs claim of unjust enrichment against KFI rests on speculation and accordingly must fail as a matter of law.

Count IX: Unfair Competition [Ken Hanna] and Count XI: Unfair Competition [Legal Representatives of the Estate of Ken Hanna]

Michael Hanna, on behalf of his father’s estate, also claims that KFI engaged in unfair competition against Ken Hanna, prior to his father’s death, and against the legal representatives of Ken Hanna’s estate, following his father’s death. These claims are based on the alleged unfair establishment and usage of KFI’s federal trademarks “Ken’s” and “Ken’s Steak House.” A prerequisite to a claim for unfair competition is the existence of some form of competition between the parties. Women’s Mut. Benefit Soc’y v. Catholic Soc’y, 304 Mass. 349, 352 (1939), quoting Kaufman v. Kaufman, 223 Mass. 104, 106-07 (1916). The plaintiff has not produced any admissible evidence which indicates competition between Ken Hanna and KFI.
In its written submission, the plaintiff confuses the rights of KFI with the rights of Ken Hanna as an individual. The plaintiff relies on supposed admissions made by Scofield, the attorney who assisted KFI and KSH in their prior trademark dispute against a third party. In Scofield’s deposition, he recalled that in this prior legal dispute KFI and KSH jointly averred that the trademark “Ken’s” had been used as early as the 1940s. Drawing on this supposed admission and the fact that “Cafe 41" did not change its legal name to ’’Ken’s Steakhouse, Inc." until 1954, the plaintiff deduces that Ken Hanna, as an individual, must have been using the name “Ken’s” in the 1940s and, therefore, acquired preemptive rights to its trademark. Such a conclusion, however, can only be drawn from a misreading of Scofield’s deposition.
The plaintiffs deduction, which infers that Ken Hanna used the trademark “Ken’s” as an individual, is unwarranted by the facts. Throughout Scofield’s deposition, he clearly referred to KSH’s corporate use of the trademark “Ken’s,” rather than Ken Hanna’s individual use of the trademark. KSH’s rights to the trademark “Ken’s,” if any, are not at issue in this case, but rather are the subject of an entirely separate pending federal trademark dispute between KSH and KFI. Perhaps more troublesome, the plaintiff has not submitted any evidence that the arguments made by KFI and KSH were even adopted as facts by the fact finder in the prior administrative proceeding. The plaintiff has not submitted any admissible evidence which infers that Ken Hanna, as an individual, at any time used the trademark “Ken’s” in a competitive business. The plaintiffs evidence only infers the corporate use of the trademark “Ken’s” by KSH and KFI.
Consequently, no admissible evidence has been presented from which a jury could infer that Ken Hanna ever competed against KFI. To the contrary, Ken Hanna contributed to KFI’s apparently successful efforts to win a portion of the salad dressing market over the course of approximately thirty-four years as a corporate founder, officer, substantial stockholder and Chairman of KFI’s Board of Directors. No evidence of any commercial affiliation or involvement by Ken Hanna has been introduced beyond his affiliations with KSH and KFI. Absent any evidence of competition, the plaintiffs claims against KFI alleging unfair competition are speculative and must fail as a matter of law.

ORDER

For the foregoing reasons, after careful consideration of the parties’ written submissions and oral arguments, the Defendant’s Motion for Summary Judgment is ALLOWED as to all counts and the Plaintiffs Cross Motion for Summary Judgment is DENIED as to all counts.

 In 1999, KFI formally changed its legal name to “Ken’s Foods, Inc.”

 Initially, Ken Hanna was given twenty-six shares and Louise Crowley only twenty-four shares, büt three weeks after incorporation a single share was transferred to Louise Crowley, making the distribution of shares equal among all four founders.

 In its submissions, the plaintiff places considerable emphasis on Ken Hanna’s alleged lack of independent legal advice regarding KFI’s use of his name. The Court has considered this aspect of the plaintiffs argument, but finds that it is not relevant to the plaintiffs claims whether Ken Hanna independently received or even sought such legal advice. Indisputably and at all relevant times, Ken Hanna’s actions on behalf of KFI or for KFI were voluntarily conducted while he was fully competent.

 Section 4 of G.L.c. 110 states: “A person who conducts business in the commonwealth shall not assume or continue to use in his business the name of a person formerly connected with him in partnership or the name of any other person, either alone or in connection with his own or with any other name or designation, without the consent in writing of such person or of his legal representatives.”

 It is possible that the proscriptions delineated in G.L.c. 110, §4 do not encompass the continued usage of a mere first name such as “Ken” or in its possessive form, “Ken’s.” See Carney Hospital v. McDonald, 227 Mass. 231, 234 (1917) (interpreting precursor to G.L.c. 110, §4 and holding that defendant could only be restrained from using full name of plaintiff corporation). Assuming the statute was so constructed to limit its scope, KFI’s use of “Ken” or “Ken’s” could not legally be restrained pursuant to G.L.c. 110, §4. This Court need not explore the validity of this interpretation any further, however, given the manifest imbalance of the equities in this case.

 Notably, in Caines, the plaintiff was not allowed to block the defendant corporation from using his name a few years after leaving the corporation and during the plaintiffs own lifetime. 247 Mass. 404. Here in contrast, a representative of Ken Hanna’s estate seeks to restrain the defendant corporation’s usage of Ken Hanna’s name more then a decade after Ken Hanna left the corporation. Further, in Caines, the plaintiff sought to block usage of his own surname. Id. In this case, a representative of Ken Hanna’s estate seeks to restrain the usage of Ken Hanna’s more common first name. Still further, Caines’s tenure and affiliation with the Caines School would most generously be calculated as lasting nineteen years. Id. In contrast, Ken Hanna’s tenure and affiliation with KFI lasted approximately thirty-four years.